[No. B223478. Second Dist., Div. One. Nov. 16, 2010.]

In re PEDRO Z., JR., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Plaintiff and Respondent, v.
PEDRO Z., SR., Defendant and Appellant.

**COUNSEL**

Darlene Azevedo Kelly, under appointment by the Court of Appeal, for Defendant and Appellant.

Andrea Sheridan Ordin, County Counsel, James M. Owens, Assistant County Counsel, and Navid Nakhjavani, Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**MALLANO, P. J.**—Presumed father Pedro Z., Sr. (Father), who was incarcerated throughout these proceedings, appeals from an order denying him

family reunification services with his son, Pedro Z., Jr., born in 2002, after the juvenile court asserted dependency jurisdiction pursuant to Welfare and Institutions Code section 300, subdivision (b) (failure to protect) and placed Pedro with his mother, Norma D. (Mother), under the supervision of the Los Angeles County Department of Children and Family Services (DCFS).[1]

Father claims he was entitled to reunification services under section 361.5 as a matter of law. There is no statute or case specifically addressing the issue of whether a former custodial parent is entitled to reunification services under section 361.5 at the time of the disposition hearing when the child is placed with the other custodial parent. We hold that under these circumstances reunification services are not mandated under section 361.5. The order denying Father reunification services is affirmed.

## BACKGROUND

Father, Mother, Pedro, and Pedro's half sister, Ashley T., lived together in the family home.[2] Father was on probation for a drug-related offense when a probation compliance search of the home on October 1, 2009, revealed methamphetamine and drug paraphernalia. Father was arrested and remained in custody throughout these proceedings. Pedro and Ashley were detained and placed in foster care until November 2009, when they were placed in the family home with the maternal grandmother after Mother moved out of the home to live nearby with another relative.

Father admitted to DCFS that he had a 10-year history of drug use and that he had used methamphetamine earlier on the day of his October 2009 arrest. He had been in a rehabilitation program for the previous two years, but he relapsed four days before his October 2009 arrest.

Seven-year-old Pedro told DCFS that he knew what drugs were and that he had seen Father smoke drugs in the kitchen and outside the family home. Pedro saw Father smoke a pipe with "green stuff" and powder in it. Pedro said that Father hid drugs in cabinets under the kitchen sink, which was one of the locations where the police found methamphetamine in their search. Pedro also claimed that he hid in the hallway so that he saw Father when he smoked, but that Father could not see him.

Pedro also told DCFS that Father sometimes hurt him by hitting him with an open hand on the back of his head and his back, and with his fist on his legs, hips and buttocks. Father left red marks but did not draw blood.

---

[1] Unspecified statutory references are to the Welfare and Institutions Code.

[2] Sixteen-year-old Ashley is not a subject of this appeal.

Mother, who was at work during the day, denied knowing that there were drugs in her home and that Father had relapsed. Although Pedro claimed to have witnessed domestic violence between his parents, his parents both denied any domestic violence. Both parents also denied that Father physically abused Pedro.

On November 23, 2009, Pedro and Ashley were placed with the maternal grandmother in the family home after Mother moved out of the home to stay nearby with a relative. The maternal grandmother monitored Mother's visits. Mother visited consistently for several hours every weekend. In November 2009, the juvenile court granted Father's request that he be allowed to send letters to Pedro. In December 2009, Mother completed a 30-hour parenting class, and at the time of the jurisdiction and disposition hearing in February 2010, Mother was attending an anger management class. Mother denied an anger problem but took the class upon the advice of her attorney.

In January 2010, Father was on an immigration hold in state prison and was to be deported to his country of origin, but the prison facility did not provide DCFS with a date of deportation. Father was not able to receive any telephone calls in state prison at that time. In a January 21, 2010 interim review report, DCFS recommended that Father not receive any family reunification services because DCFS did not know if Father planned to return to the United States after his deportation and participate in court-ordered services.

After both parents testified at a contested jurisdiction and disposition hearing on February 25, 2010, the juvenile court found that Mother was unaware of Father's drug relapse. The court sustained an amended petition under section 300, subdivision (b), based on the parents' "detrimental and endangering home environment for the children in that methamphetamine was found in the children's home within access of the children," on Father's possession of drug paraphernalia in the home within access of the children, on Father's 10-year history of drug abuse and current use of methamphetamine, and on Father's inappropriate discipline of Pedro by striking Pedro's head with his hand.

At the disposition hearing, Father's attorney requested that the court offer Father family reunification services, notwithstanding Father's anticipated deportation. Father's attorney argued that "the Department has not established that he will not be able to return to the country within the two years that he would be allowed under the law. [¶] His . . . probation violation that he's serving will be done on June 10th of this year. And so I believe that he has the possibility of reunifying with his child. And I'm requesting family reunification services."

Over the objection of DCFS, the juvenile court ordered the children placed in Mother's home under the condition that Father not reside in the home. Family maintenance services were ordered. Noting that Mother had already completed a parenting course, the court did not order further programs at that time. The court denied Father reunification services "since it is a home of parent, mother, order. However, should he be . . . in a position to return to the family—or to the country, then, the Department can work with him to develop a case plan. I would want to see some type of drug testing and substance abuse counseling for father," "and parenting." The court also permitted Mother to transport Pedro to see Father in custody, and should Father return to the United States, he was to have monitored visitation, with the maternal grandmother as the monitor.

Father appeals from that part of the February 25, 2010 order purportedly denying him family reunification services. He argues that, as a presumed father, he was entitled to reunification services under section 361.5 as a matter of law unless one of the statutory exceptions applied, and the court did not find any of the exceptions to be applicable. Father also maintains that there is no statutory authorization for the denial of reunification services based on the probability of his deportation. He claims that the denial of services is prejudicial because the absence of services "will affect the family law orders which the court will make on termination of dependency jurisdiction and thus father's ability to return to his family in the future," and that it was likely that Mother would receive sole legal and physical custody of Pedro.

In Father's reply brief, he requests that we take judicial notice of a copy of an August 12, 2010 electronic record of the Los Angeles County Sheriff's Department showing that Father has been in its custody since May 23, 2010, with no reported release date.[3] He argues that because he has not yet been deported, he could have been receiving reunification services since the time of the disposition hearing in February 2010, and therefore he has been prejudiced by the juvenile court's order denying him services.

Because this postjudgment evidence was not before the juvenile court and no extraordinary circumstances are presented, we deny Father's request for judicial notice. (See *In re Zeth S.* (2003) 31 Cal.4th 396, 400, 405 [2 Cal.Rptr.3d 683, 73 P.3d 541] [general rule is that only under exceptional circumstances may appellate court consider postjudgment evidence not before the juvenile court on appeal from order terminating parental rights]; *In re Robert A.* (2007) 147 Cal.App.4th 982, 990 [55 Cal.Rptr.3d 74] [applying *Zeth S.* rule on appeal of order on supplemental petition].)

---

[3] The sheriff's department record shows the immigration hold, but contains no information on a release date.

## DISCUSSION

We reject Father's contention that the juvenile court was *required* as a matter of law to provide him with family reunification services under section 361.5. As we explain, section 361.5 is inapplicable when at the disposition hearing a child is returned to the custody of a parent.

Subdivision (a) of section 361.5 provides that, unless certain exceptions apply, "whenever a child is removed from a parent's or guardian's custody, the juvenile court shall order the social worker to provide child welfare services to the child and the child's mother and statutorily presumed father or guardians." (§ 361.5, subd. (a).) " '[C]hild welfare services' " includes both reunification as well as maintenance services. (*Carolyn R. v. Superior Court* (1995) 41 Cal.App.4th 159, 165 [48 Cal.Rptr.2d 669].) The remaining provisions of section 361.5 set out "who is *entitled to receive* mandatory reunification services, who *may receive* reunification services, the circumstances under which the court *may deny* reunification services to someone otherwise entitled to receive them, and those circumstances under which the court *must deny* reunification services." (*In re Adrianna P.* (2008) 166 Cal.App.4th 44, 56 [81 Cal.Rptr.3d 918] (*Adrianna P.*).)

Section 361.5, subdivision (a)(1) also contains time limits on the provision of family reunification services. For a child three years of age and older and not part of a sibling group, "court-ordered services shall be provided beginning with the dispositional hearing and ending 12 months after the date the child entered foster care as defined in Section 361.49, unless the child is returned to the home of the parent or guardian." (§ 361.5, subd. (a)(1)(A).)

The language of section 361.5, subdivision (a)(1)(A) contemplates that the period for mandatory reunification services begins at the time of disposition and continues while the child is in foster care or until the child is returned to the home of the parent. In other words, the language of section 361.5, subdivision (a)(1)(A) implies that the statute does not apply when, at the disposition hearing, a child does not enter foster care, but is returned to a parent.

As here, when a child is adjudged a dependent but is placed in the custody of a parent subject to the supervision of a social worker, the applicable statutory provision is section 362, subdivision (b), which provides that "[w]hen a child is adjudged a dependent child of the court, on the ground that the child is a person described by Section 300 and the court orders that a parent or guardian shall retain custody of the child subject to the supervision

of the social worker, the parents or guardians shall be required to participate in child welfare services or services provided by an appropriate agency designated by the court." (§ 362, subd. (b).)

■ The services referred to in section 362, subdivision (b), are not reunification services but *family maintenance services*, which are provided "in order to maintain the child in his or her own home" (§ 16506), and are available to families "whose child or children have been adjudicated a dependent of the court under Section 300, and where the court has ordered the county welfare department to supervise while the child remains in the child's home" (§ 16506, subd. (a)).

And, when the child remains in a parent's home, the court reviews the status of the case every six months under section 364; under such review, the court is not concerned with reunification, but in determining "whether the dependency should be terminated or whether further supervision is necessary." (*In re Joel T.* (1999) 70 Cal.App.4th 263, 267 [82 Cal.Rptr.2d 538]; see *In re Gabriel L.* (2009) 172 Cal.App.4th 644, 650 [91 Cal.Rptr.3d 193] (*Gabriel L.*).) This is so because the focus of dependency proceedings "is to reunify the child with *a parent*, when safe to do so for the child. (§§ 300.2, 361.5, subd. (a), 16507.)" (*Adrianna P., supra*, 166 Cal.App.4th at p. 59.) The goal of dependency proceedings—to reunify a child with at least one parent—has been met when, at disposition, a child is placed with a former custodial parent and afforded family maintenance services.

"Family reunification services shall only be provided when a child has been placed in out-of-home care, or is in the care of a previously noncustodial parent under the supervision of the juvenile court." (§ 16507, subd. (b).)

■ Because Pedro was placed neither in out-of-home care nor in the custody of a former noncustodial parent, Father was not entitled to reunification services under sections 16507, subdivision (b) and 361.5.

■ Our conclusion is consistent with section 361.2, which governs at disposition when a court orders removal of a dependent child from a custodial parent and places the child with a former *noncustodial* parent. (§ 361.2, subd. (a).) When a child is placed with a former noncustodial parent under the supervision of the juvenile court, "the court may order that reunification services be provided to the parent or guardian from whom the child is being removed, or the court may order that services be provided

solely to the parent who is assuming physical custody in order to allow that parent to retain later custody without court supervision, or that services be provided to both parents, in which case the court shall determine, at review hearings held pursuant to Section 366 [periodic status review for children in foster care], which parent, if either, shall have custody of the child." (§ 361.2, subd. (b)(3).)

Under section 361.2, "[t]he decision whether to provide services and to which parent is discretionary to the court because the child is not out of the home, but in placement with a parent." (*Gabriel L., supra*, 172 Cal.App.4th at p. 651.)

■ "[A] section 361.2 placement with a [previously] noncustodial parent should be treated in the same manner as a section 362 placement with a custodial parent. In either case, the time limits for services set forth in section 361.5 do not apply if dependents are not removed from the custody of both parents at the dispositional hearing. [Citations.] In this case, section 361.5 did not become relevant until the amended petition resulted in the removal of dependents from the custody of both parents . . . ." (*In re A.C.* (2008) 169 Cal.App.4th 636, 649 [88 Cal.Rptr.3d 1] (*A.C.*).) Thus, "if minors remain in the custody of a parent, section 361.5 plays no role. The section 361.5, subdivision (a) 'clock' does not start to run against such parents unless and until the children are removed from the physical custody of the parent(s) and the court determines whether the parent(s) is (are) entitled to reunification services pursuant to the lengthy analysis set forth in section 361.5. Despite the existence of an actual (if brief) removal from the parent's 'custody' (or 'physical custody') between the initial detention and the dispositional hearing, section 361.5 is inapplicable in the absence of a disposition ordering a placement with someone other than a parent." (*A.C.*, at p. 650, fn. omitted.)

The court in *A.C.* observed that the foregoing result "makes sense. Children who are placed with at least one of their parents from the beginning of the dependency are differently situated than those who immediately enter foster care. Such a child, in most cases, is not suffering from the same level of disruption and need for prompt permanency adjudication as he or she might otherwise experience in a foster care placement. Moreover, a custodial parent who has lost custody to a (previously) noncustodial parent following a dependency petition is not similarly situated to one who loses custody of the child to an alternative placement. This parent does not have the same section 361.5 right to attempt reunification during the dependency proceeding if the court decides to maintain custody with the previously noncustodial parent." (*A.C., supra*, 169 Cal.App.4th at p. 652.)

For the foregoing reasons, the February 25, 2010 order is affirmed.

## DISPOSITION

Appellant's request for judicial notice is denied. The February 25, 2010 order is affirmed.

Rothschild, J., and Chaney, J., concurred.