Filed 1/20/15  In re Michael C. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re MICHAEL C., a Person Coming Under the Juvenile Court Law. | B254124 (Los Angeles County Super. Ct. No. DK02263) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. MONICA C., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Philip L. Soto, Judge, and Steven R. Klaif, Juvenile Court Referee.  Affirmed.

Marissa Coffey, under appointment by the Court of Appeal, for Defendant and Appellant.

Richard D. Weiss, Acting County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Stephen D. Watson, Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

Monica C. (mother) appeals from the juvenile court's order removing her four-year-old son, Michael C., from her custody, granting sole legal and physical custody of Michael to Michael's father, V.N. (father), and terminating jurisdiction over Michael's dependency case after the court sustained the Los Angeles County Department of Children and Family Services' (DCFS) supplemental petition filed pursuant to Welfare and Institutions Code section 387.[1]  Mother contends the juvenile court erred in refusing to order DCFS to provide her reunification services pursuant to section 361.5, subdivision (a) after Michael was removed from her custody.  Mother further contends that she was not provided adequate notice that the juvenile court could refuse to order DCFS to provide reunification services before terminating jurisdiction over Michael's dependency case.  Finally, Mother contends the juvenile court erred in finding the Indian Child Welfare Act (ICWA) did not apply to Michael's dependency case after mother informed the court that she believed she was a descendant of the Cherokee tribes.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Pursuant to a family court order, mother and father lived in separate households and shared joint legal and physical custody of Michael.  On October 25, 2013, DCFS received a referral alleging that Michael was being subjected to general neglect and emotional abuse by both of his parents.  According to the referral, mother had reported that there had been incidents of domestic violence between herself and father.  The referral also alleged that mother would sometimes forget to turn off the stove in her apartment while Michael was staying with her, and that she would allow Michael to stay up until midnight and watch television all day.  The referral also alleged that mother would leave Michael alone in her apartment for more than an hour while she went to the gym, and that she would yell at him if he was crying when she returned.  Finally, the referral alleged that mother suffered from mental illness.

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

2

On November 14, 2013, DCFS filed a non-detained dependency petition pursuant to section 300 to declare Michael a dependent of the court. The petition alleged Michael's father had physically abused mother in Michael's presence. The petition further alleged that mother suffered from emotional and mental disorders, and that she had failed to properly treat her disorders in the past.

Mother and father each appeared with counsel at the November 14, 2013 detention hearing, where the court found that father was Michael's presumed father. At the hearing, father claimed no Native American ancestry, and mother claimed Cherokee ancestry from her father's family. The juvenile court inquired whether mother had registered her Native American ancestry, to which mother's counsel responded that she had not. Mother then claimed that she was in the process of "getting [her] card." Because mother was not registered, the court found ICWA did not apply to Michael's case. The juvenile court then released Michael to his parents' custody, with each parent to share joint legal and physical custody pursuant to the family court order. The court ordered DCFS to provide mother and father with family maintenance services, and it set a jurisdiction hearing for January 7, 2014.

In its January 7, 2014 jurisdiction/disposition report, DCFS noted that ICWA "does or may apply" to Michael's case. In that same report, DCFS recommended that the juvenile court declare Michael a dependent of the court and order DCFS to provide Michael's parents with family maintenance services. DCFS did not request to have Michael removed from either parent's custody.

At the January 7, 2014 disposition hearing, the juvenile court sustained in its entirety DCFS's petition filed on Michael's behalf and declared Michael a dependent of the court. The court then ordered Michael placed in his parents' joint custody under DCFS's supervision. The court also ordered DCFS to provide Michael's parents with family maintenance services. As to father, the court ordered that he stay at least 100 yards away from mother and participate in domestic-violence-for-perpetrators, anger-management, and conflict-resolution programs. The court ordered mother to participate in a support group for victims of domestic violence. The court further ordered mother to

3

consult a licensed psychiatrist and comply with any and all prescribed counseling and medication regimens prescribed by the psychiatrist. The court ordered both parents to participate in a family preservation program. Finally, the court set a section 364 review hearing for July 9, 2014.

On March 11, 2014, the juvenile court issued a removal order authorizing DCFS to detain Michael from mother's custody. According to DCFS's March 14, 2014 detention report, mother had failed to comply with the court's orders issued at the January 7, 2014 disposition hearing. For example, mother failed to meet with her assigned family-preservation social worker, repeatedly cancelling in-home visits at the last minute. Additionally, mother had yet to visit a licensed psychiatrist to address her mental-health issues. Further, on several occasions, mother had lodged irrational accusations toward several social workers, including her assigned case worker, accusing her of being a "mobster" and conspiring with father to remove Michael from her custody. The report concluded that Michael was at a "very high" risk of harm due to mother's mental-health issues and her failure to address those issues as required by the court's January 7, 2014 disposition order.

On March 14, 2014, DCFS filed a supplemental petition pursuant to section 387 to detain Michael from mother's custody, alleging that mother had failed to meet with a licensed psychiatrist, take her prescribed medication, or participate in any of her court-ordered programs and services.

The juvenile court commenced a detention hearing on the supplemental petition on March 14, 2014. The court made emergency detention findings and continued the hearing to March 19, 2014 for arraignment and detention.

DCFS filed a last-minute information report on March 19, 2014. In that report, DCFS detailed two monitored visits between Michael and mother that occurred on March 17 and 18, 2014. According to the report, throughout most of both visits, mother tried to talk about Michael's dependency case with her case worker in front of Michael. Despite the case worker's attempts to direct mother's attention to Michael, mother often redirected her focus to the case worker to ask questions about Michael's case.

4

On March 19, 2014, the court ordered Michael detained from mother's custody and released to father's custody, with mother to have monitored visits. The court set a jurisdiction/disposition hearing on the supplemental petition for April 16, 2014.

On March 26, 2014, DCFS sent mother notice of the April 16, 2014 jurisdiction/disposition hearing entitled "Notice of Hearing on Petition." The notice informed mother that (1) a petition had been filed on Michael's behalf pursuant to section 387; (2) a jurisdiction/disposition hearing would be held on April 16, 2014; (3) she had the right to be present at the hearing, to be represented by counsel, and to present evidence; and (4) the court could proceed in her absence.

In its April 16, 2014 jurisdiction/disposition report for the supplemental petition, DCFS recommended that the juvenile court make the following orders: (1) remove Michael from mother's custody; (2) order mother to undergo a psychological evaluation pursuant to Evidence Code section 730 to identify mother's mental-health issues; (3) provide mother with family reunification and maintenance services; and (4) continue the court's previous orders and services. The report stated that DCFS had serious concerns about mother's mental health because she did not appear to be taking medication and her behavior continued to become increasingly erratic, incoherent, and irrational.

The juvenile court continued the April 16, 2014 jurisdiction hearing to April 30, 2014. On April 30, 2014, DCFS filed two last-minute information reports. In the first report, DCFS changed its recommendation set forth in its April 16, 2014 jurisdiction/disposition report and requested that the juvenile court grant father sole legal and physical custody of Michael. DCFS stated that it appeared unlikely that mother would be able to successfully reunify with Michael due to her refusal to recognize her mental-health issues. The report detailed two monitored visits that occurred in April 2014, during which mother alternated between periods in which she was calm and paid attention to Michael and periods in which she acted belligerently toward her case worker, accusing the case worker and others of conspiring against her to remove Michael from her custody.

At the jurisdiction/disposition hearing, the juvenile court sustained the supplemental petition. The court refused to grant mother reunification services because it found that reunification would not be in Michael's best interests. In doing so, the court stated as follows: "[B]ased on everything I have read and everything I have seen, the court finds that there is -- family reunification, even if the court has discretion, which the court does have discretion to grant further reunification to the parents from whom the child was removed, even when the child is placed with the non offending parent or has been returned to a parent, the court is unable to find that by any standard that reunification can be -- reunification would be -- would be a benefit to the child's best interest."

After the court refused to grant reunification services, mother spoke up, stating: "Your honor, my son and I are Cherokee Indian. The Department is not addressing this issue, your honor." The court responded: "The court finds ICWA did not apply back in November." The court then terminated jurisdiction, granted father sole legal and physical custody of Michael, and ordered monitored visitation for mother.

At the conclusion of the hearing, mother's attorney requested that the court note his objection to the court's order; however, he did not specify upon which grounds his objection was based. The court noted the objection, issued a family law exit order, and stayed imposition of its order pending receipt of a juvenile custody order to be filed on May 2, 2014. On May 2, 2014, the juvenile court issued its order terminating jurisdiction over Michael's dependency case.[2]

## DISCUSSION

### I. The Juvenile Court's Refusal to Order Reunification Services

Mother contends the juvenile court erred in failing to order DCFS to provide her with reunification services pursuant to section 361.5, subdivision (a) after awarding

---

[2] On our own motion, we take judicial notice of the juvenile court's minute order from the May 2, 2014 hearing, which was entered after mother filed her notice of appeal.

6

custody of Michael to father.  Mother also contends DCFS failed to provide proper notice that the court could terminate jurisdiction without ordering reunification services.

### A. *Notice*

Mother argues DCFS failed to provide adequate notice that the juvenile court could terminate jurisdiction and deny ordering reunification services at the April 30, 2014 jurisdiction/disposition hearing on DCFS's section 387 supplemental petition.  DCFS contends mother forfeited any challenge to the court's rulings because she did not raise a notice-based objection at the April 30, 2014 hearing.  (*In re Wilford J.* (2005) 131 Cal.App.4th 742, 754 ["defective notice and the consequences flowing from it may easily be corrected if promptly raised in the juvenile court"].)

"'[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court.  [Citation.]  The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected.  [Citation.]'  [Citations.]  In addition, '[g]eneral objections are insufficient to preserve issues for review.  [Citation.]  The objection must state the ground or grounds upon which the objection is based.  [Citation.]'  [Citation.]"  (*In re Daniel B.* (2014) 231 Cal.App.4th 663, 672.)  This forfeiture rule applies to challenges based on defective notice where the appellant did not raise the issue before the juvenile court.  (See *In re Wilford J.*, *supra*, 131 Cal.App.4th at p. 754 [father forfeited challenge to defective notice of jurisdictional hearing where he failed to raise the issue before the juvenile court despite his appearance at several hearings subsequent to the jurisdictional hearing].)

Here, mother's counsel objected to the juvenile court's April 30, 2014 order but did not specify upon which grounds the objection was based.  However, despite her failure to specifically object to DCFS's notice at the disposition hearing, mother was not afforded the opportunity to raise the notice issue at a subsequent hearing.  (See *In re Wilford J.*, *supra*, 131 Cal.App.4th at p. 754 ["Notwithstanding the juvenile court's error in proceeding with the unscheduled jurisdictional hearing, [appellant] appeared with counsel at subsequent disposition hearings and had the opportunity during each one to challenge the court's earlier finding that notice had been properly given.  He did not and

7

thus deprived the juvenile court of the opportunity to correct the mistake. [Citation.] Accordingly, he has forfeited that issue on appeal."].) As a result, mother argues she should be permitted to raise the issue for the first time on appeal. We agree and will exercise our discretion to consider the issue. (See *ibid.* ["[f]orfeiture is not automatic, and the appellate court has discretion to excuse a party's failure to properly raise an issue in a timely fashion . . . ."].)

The hearing originally scheduled for April 16, 2014 and continued to April 30, 2014, was set as a jurisdiction/disposition hearing on DCFS's section 387 supplemental petition. Accordingly, DCFS's obligation to provide mother with notice of the hearing was guided by section 387, subdivision (d). That subdivision provides: "Upon the filing of the supplemental petition, the clerk of the juvenile court shall immediately set the same for hearing within 30 days, and the social worker shall cause notice thereof to be served upon the persons and in the manner prescribed by Sections 290.1 and 291." (§ 387, subd. (d).) Section 290.1 establishes the notice requirements that DCFS must follow immediately after filing a section 387 supplemental petition seeking to remove custody of the child from his or her parent. (§ 290.1.) Section 291 sets forth the notice requirements that DCFS must follow after the juvenile court has conducted an initial hearing on the supplemental petition. (§ 291; see also *In re Wilford J.*, *supra*, 131 Cal.App.4th at p. 749.)

At the time DCFS issued notice on March 26, 2014, the juvenile court had already conducted its initial hearing on DCFS's supplemental petition on March 14 and 19, 2014. Accordingly, the March 26, 2014 notice was governed by section 291. (See § 291.)

Section 291, subdivision (d) sets forth the content that must be included in a written notice of hearing on a section 387 petition following the court's initial hearing on the petition. (§ 291, subd. (d).) Under that subdivision, DCFS must include the following information in the notice informing the dependent child's parent of a scheduled hearing on the supplemental petition: (1) the name and address of the person being notified; (2) the nature of the hearing for which notice is being issued; (3) each section and subdivision under which the proceeding has been initiated; (4) the date, time, and

place of the hearing; (5) the name of the child upon whose behalf the petition has been brought; (6) a statement concerning the parent's right to representation and his or her potential liability for the costs of appointed representation and child support; and (7) a copy of the supplemental petition.  (§ 291, subds. (d)(1)-(7).)

Mother complains DCFS's notice issued on March 26, 2014 was deficient because it did not inform her that the court could refuse to order reunification services or terminate jurisdiction at the jurisdiction/disposition hearing on DCFS's section 387 petition.  We disagree.  Section 291 does not require DCFS to provide express notice that the court may refuse to order reunification services for the parent of a dependent child in the event the court removes the child from that parent's custody.  (§ 291, subds. (d)(1)-(7).)  Further, DCFS's March 26, 2014 notice complied with the content requirements of section 291, subdivision (d).  As noted above, the notice stated that a "Jurisdiction/Disposition Hearing" would be held on April 16, 2014.  (See § 291, subd. (d)(2).)  The notice also informed mother that DCFS had filed a petition pursuant to section 387 on Michael's behalf.  (See § 291, subd. (d)(3).)  Finally, the notice informed mother of her right to representation and warned her that the court could proceed with the jurisdiction/disposition hearing in the event she did not appear.  (See § 291, subds. (d)(6)-(7).)

Mother's contention that she was not expressly notified that the court could deny her reunification services at the April 30, 2014 hearing is without moment.  As noted, DCFS's March 26, 2014 notice informed mother of the nature of the April 30, 2014 hearing because it listed the hearing as a jurisdiction/disposition hearing on DCFS's supplemental petition.  "At [a] section 387 disposition hearing, the court applies the same procedures that govern disposition hearings on a section 300 petition as set forth by the California Rules of Court.  (Cal.[ ]Rules of Court, [rule 5.565(e)(2)].)"  (*In re Suhey G.* (2013) 221 Cal.App.4th 732, 741, fn. 20.)  Whether the juvenile court should grant reunification services to an offending parent and whether the juvenile court should continue jurisdiction over a dependency matter are issues that may be addressed at a disposition hearing.  (See *ibid*.)  Accordingly, DCFS did not provide mother defective

9

notice because the March 26, 2014 notice informed mother that the court would conduct a jurisdiction/disposition hearing on the supplemental petition.

## B. Denial of Reunification Services

Mother also claims the juvenile court erred in refusing to order DCFS to provide her with reunification services. Mother contends the court's ruling was error because, under section 361.5, subdivision (a), the court was required to order DCFS to provide her with reunification services once Michael was removed from her custody. DCFS counters that the juvenile court's refusal to order reunification services was proper because Michael was returned to the custody of his father.

Under section 361.5, subdivision (a), "whenever a child is removed from a parent's or guardian's custody, the juvenile court shall order the social worker to provide child welfare services to the child and the child's mother and statutorily presumed father or guardians." (§ 361.5, subd. (a).) For purposes of section 361.5, child welfare services may include both reunification and maintenance services. (*In re Pedro Z., Jr.* (2010) 190 Cal.App.4th 12, 19 (*Pedro Z.*).) Under section 361.5, subdivision (b), the juvenile court may deny reunification services in certain enumerated circumstances to those who would otherwise be entitled to receive them. "[T]he language of section 361.5, subdivision (a)(1)(A) implies that the statute does not apply when, at the disposition hearing, a child does not enter foster care, but is returned to a parent." (*Ibid*; see also *In re A.C.* (2008) 169 Cal.App.4th 636, 650 ["if minors remain in the custody of a parent, section 361.5 plays no role"]; *ibid.* ["section 361.5 is inapplicable in the absence of a disposition ordering a placement with someone other than a parent"]; see also § 16507, subd. (b) ["Family reunification services shall only be provided when a child has been placed in out-of-home care, or is in the care of a previously noncustodial parent under the supervision of the juvenile court."].)

Mother contends that despite the court's placement of Michael in father's custody, section 361.5, subdivision (a) was triggered by the court's dispositional order because father was an offending custodial parent and could not have been awarded custody as a noncustodial parent pursuant to section 361.2, which would have allowed the court to

bypass ordering DCFS to provide mother reunification services under section 361.5. (See § 361.2, subd. (b)(1) [after removing child from custodial parent and placing him with noncustodial parent under DCFS supervision, the court may terminate jurisdiction]; see also *Pedro Z., supra*, 190 Cal.App.4th at p. 21 [under a section 361.2 placement, section 361.5 does not become relevant until the dependent child is removed from the custody of both parents].)

We agree that section 361.2 does not apply to Michael's case because the original section 300 petition was sustained against both mother and father, and Michael was residing with both mother and father at the time that petition was filed. (See § 361.2, subd. (a) [A "noncustodial parent" is "a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300."]; see also *In re Adrianna P.* (2008) 166 Cal.App.4th 44, 55, fn. 5 [A "custodial parent" is the "parent who had physical custody of the child at the time of the events that gave rise to the petition."].) However, even when the juvenile court does not proceed under section 361.2 and grants custody of a dependent child to one custodial parent but not the other, the court is not required to order reunification services under section 361.5 for the parent from whom the child is removed. (See *Pedro Z.*, *supra*, 190 Cal.App.4th at p. 20; see also § 16507, subd. (b).) Rather, in such a situation, the court is afforded broad discretion under section 362 to make any reasonable orders it "deems necessary and proper" to protect the child's interests. (See § 362, subd. (d); see also *Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 309 (*Bridget A.*).)

Here, the juvenile court decided to award custody of Michael to father only and immediately terminate jurisdiction, as it could have done had section 361.2 applied. (See *Pedro Z.*, *supra,* 190 Cal.App.4th at p. 21 [a section 362 placement "should be treated in the same manner" as a section 361.2 placement]; see also § 361.2, subd. (b)(1).) Under the circumstances of this case, where the court considered mother's failure to comply with the court's original disposition order that she consult with a licensed psychiatrist and address her mental health issues and DCFS's concerns that mother's unaddressed mental-health issues posed a high risk of harm to Michael's safety, the court did not abuse its

11

discretion in denying reunification services.  (See *Bridget A.*, *supra*, 148 Cal.App.4th at p. 309 [the juvenile court has broad discretion to determine what would best serve the child's interests and enter appropriate orders to protect those interests].)

## II.     The Juvenile Court's ICWA Finding

Finally, Mother contends the juvenile court erred when it found that ICWA did not apply to Michael's case.  Mother asserts that DCFS was required to provide notice of Michael's dependency case to the Cherokee tribes once she claimed Cherokee descent at the original detention hearing.

ICWA is designed to protect "the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for, and permitting tribal participation in, dependency actions.  [Citation.]" (*In re Holly B.* (2009) 172 Cal.App.4th 1261, 1266; see also 25 U.S.C. §§ 1901, 1902, 1903(1), 1911(c), 1912.) " 'ICWA presumes it is in the best interests of the child to retain tribal ties and cultural heritage and in the interest of the tribe to preserve its future generations, a most important resource.' [Citation.]" (*In re H.B.* (2008) 161 Cal.App.4th 115, 120.)

ICWA applies to dependency proceedings that may result in:  an involuntary foster care placement; a guardianship or conservatorship placement; an adoptive placement; or, the termination of parental rights.  (Cal. Rules of Court, rule 5.480; see also *In re Holly B.*, *supra*, 172 Cal.App.4th at p. 1266.)  From the outset of a dependency proceeding described above, the juvenile court and DCFS "have an affirmative and continuing duty to inquire whether a child is or may be an Indian child."  (Cal. Rules of Court, rule 5.481(a).)  ICWA defines an "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); § 224.1, subd. (a).)  If there is reason to know that an Indian child is involved in the dependency proceeding, notice of the pending proceeding and the right to intervene must be sent to the associated tribe or the Bureau of Indian Affairs if the child's tribal affiliation is not known.  (Cal. Rules of Court, rule 5.481(b).)

12

The circumstances that may establish a reason to know the child is an Indian child include, but are not limited to, a member of the child's extended family providing information suggesting that the child is a member of, or eligible to be a member of, a tribe or one or more of the child's biological parents are or were members of a tribe. (§ 224.3, subd. (b)(1).) Once the court or DCFS has reason to know that the child is an Indian Child, DCFS must make further inquiry regarding the possible Indian status of the child, and to do so as soon as practicable, by interviewing the parents, Indian custodian, and the extended family members. (§ 224.3, subd. (c).)

At the November 14, 2013 detention hearing, mother claimed Cherokee ancestry from her father's family. However, the court found ICWA did not apply to Michael's case after mother stated that she had yet to register her alleged Native American ancestry. Despite the court's finding, DCFS noted in its report for the January 7, 2014 jurisdiction hearing that ICWA "does or may apply" to Michael's case. In its subsequent March 14, 2014 detention report on the supplemental petition, DCFS noted that ICWA does not apply to Michael's case; yet, there is no indication that DCFS ever inquired into Michael's potential Indian-child status after issuing the January 7, 2014 report. When mother again raised the issue of Michael's Indian-child status at the April 30, 2014 jurisdiction/disposition hearing on the supplemental petition, the court dismissed mother's concerns, stating that the court had already determined at the original detention hearing that ICWA did not apply to Michael's case.

As section 224.3, subdivision (c) suggests, once mother claimed that she was a descendant of the Cherokee tribes, thereby providing the court and DCFS reason to know that Michael may be an Indian child for purposes of ICWA, DCFS should have been required to inquire into Michael's potential ancestry beyond the court's brief questioning of mother before the court determined that ICWA did not apply. (See § 224.3, subds. (b)(1) & (c).) However, even assuming the juvenile court erred in finding ICWA did not apply to Michael's case, such error was harmless and does not warrant reversal of the court's order terminating jurisdiction and awarding father sole custody of Michael. DCFS never sought to have Michael placed in foster care or have mother's parental rights

13

terminated, and mother has made no attempt to demonstrate that a different result in Michael's case would have been reached had notice been provided to the Cherokee tribes. (See *In re Alexis H.*, *supra*, 132 Cal.App.4th at p. 16 [defective ICWA notice harmless where DCFS "did not pursue foster care or adoption, instead recommending from the beginning that the children remain with their [parent]"]; see also 25 U.S.C. § 1912(a) [under the federal law, notice required only when foster care placement or termination of parental rights sought]; *In re S.B.* (2005) 130 Cal.App.4th 1148, 1162 ["[A]ny failure to comply with a higher state standard, above and beyond what the [federal law] itself requires, must be held harmless unless the appellant can show a reasonable probability that he or she would have enjoyed a more favorable result in the absence of the error."].)

## DISPOSITION

The juvenile court's order is affirmed.

WOODS, J.

**We concur:**

**PERLUSS, P. J.**                                                    **ZELON, J.**

14