Filed 11/2/20  In re N.P. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re N.P., a Person Coming Under the Juvenile Court Law. | B304583<br>(Los Angeles County Super. Ct. No. 19CCJP06926) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>DAVID P.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Pete R. Navarro, Judge Pro Tempore. Affirmed.

Christopher R. Booth, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel, and Jane Kwon, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

David P. (father) appeals from the juvenile court's denial at a jurisdiction and disposition hearing of father's request for visitation at the Los Angeles County jail, where father was incarcerated. Finding no abuse of discretion, we affirm the juvenile court's order.

## BACKGROUND

N.P., then nine years old, came to the attention of the Los Angeles County Department of Children and Family Services (DCFS) in September 2019 as part of an investigation into allegations that father had physically abused N.P.'s older half sister, M.P.[1] During DCFS's initial investigation, N.P., father, and mother denied that father had physically abused N.P. At an

---

[1] N.P. and M.P. have different mothers. At the time of the abuse that sparked this investigation, which happened during a visit to father's home, M.P. was living primarily with her mother, Monique H. N.P. lived with father, Marina H. (mother), and paternal cousin Marquis S. Mother was a party to the proceedings in the juvenile court, but filed no notice of appeal. Earlier DCFS referrals for allegations of father's physical abuse of both N.P. and M.P.—in 2007 (M.P.), 2013 (slapping M.P. and punching N.P. in the chest), and 2017 (M.P. and N.P.)—were closed as unfounded.

2

unannounced DCFS home visit on October 18, 2019, N.P. reported that he felt safe in the home.

On October 21, 2019, however, N.P.'s paternal cousin Marquis S. called DCFS and reported that father had been physically abusing both mother and N.P. and had been abusing alcohol and prescription medication. Marquis provided DCFS with an audio recording of father strangling mother on the evening of September 3, 2019, as N.P. watched; both mother and N.P. confirmed the contents and identities of the people in the recording. In the transcript of the audio recording, father mocks mother for screaming and gasping for air as he strangles her. N.P. begs his mother to stop gasping for air and screaming. Father was already strangling mother as the audio recording began, and released her and then threatened to kill her shortly before the 1 minute, 57 second audio recording ended.

On October 23, 2019, DCFS sought and the juvenile court issued an expedited order to detain N.P. from father. The same day, DCFS retrieved mother and N.P. from N.P.'s school and drove them first to a DCFS office and then to a restaurant where a domestic violence shelter arranged to have a taxi retrieve mother and N.P. and drive them to the shelter's undisclosed location.

On October 25, 2019, DCFS filed a petition under Welfare and Institutions Code section 300, alleging in three counts that N.P. was a person described by section 300 based on allegations of father's domestic violence against mother (counts a-1 and b-1), substance abuse (count b-2), and mother's failure to protect (all counts).[2] At detention hearings on October 28 and 31, 2019, the

---

[2] Further statutory references are to the Welfare and Institutions Code.

3

juvenile court concluded that a prima facie showing existed that N.P. was a person described by section 300. Based on mother's temporary residence with N.P. at a domestic violence shelter, the juvenile court detained N.P. from father and released him to mother under DCFS's supervision. The juvenile court initially (at the October 28 hearing) ordered that father would have at least one monitored visit with N.P. "at a DCFS office or other appropriate location" before the next hearing date, but ultimately (at the October 31 hearing) ordered no visitation based on mother's shelter's requirement that there be no contact with father while she remained in the shelter.[3] The juvenile court set the matter for hearing on December 19, 2019.

On December 5, 2019, DCFS filed its jurisdiction and disposition report. DCFS explained that at an interview on December 2, N.P. reported that, in addition to the domestic violence allegations detailed in the original section 300 petition, father had physically abused him by "slapping [N.P.] across the face and punching him in the chest." On December 18, 2019—the day before the scheduled disposition and jurisdiction hearing— DCFS filed an amended section 300 petition alleging two additional counts (a-2 and b-3) regarding father's physical abuse of N.P.

That same day—December 18, 2019—father was arrested on charges of "child abuse," according to mother's counsel, based on "the subject of this case." The juvenile court continued the jurisdiction and disposition hearing to January 17, 2020, and

_____

[3] At the October 31, 2019 hearing, mother's counsel also objected to father having any visitation based on a report that "outside of the courtroom" before the hearing, "father was attempting to tell [N.P.] what to say" at the hearing.

4

issued an order that the Los Angeles County Sheriff's Department transport father from jail to the hearing and back.

At the jurisdiction and disposition hearing on January 17, 2020, the juvenile court sustained the amended petition as to both parents, placed N.P. with mother under DCFS's supervision, ordered family maintenance services to N.P. and mother and enhancement services to father, and ordered that father have one two-hour monitored visit per week at a DCFS office. The juvenile court gave DCFS discretion to liberalize visits. Based on his incarceration, father requested that visitation be required at the jail. The juvenile court denied father's request, initially stating, "I'm disinclined to order visitation, that he be taken to county jail. That's not the best place to visit." The juvenile court then stated, "I'm going to allow monitored visits in a [DCFS] office. If [father is] pending trial, I don't want to run the risk of tainting— any attempts to taint or coerce the minor, influence the minor in changing his testimony. I don't want to put him on . . . once he completes his criminal case, you can file the appropriate motions."

Father filed a timely notice of appeal.

## DISCUSSION

Father appeals from the denial of visitation with his son while father was incarcerated pending criminal proceedings because the juvenile court did not make a finding that visitation at the county jail would be detrimental to N.P. (See § 366.21, subd. (h).) DCFS argues that it was not required to show a detriment to N.P. because the juvenile court did not order reunification services, but rather enhancement services. The detriment standard in section 366.21, subdivision (h), DCFS explains, is not the applicable standard. According to DCFS, the

5

juvenile court was required only to balance N.P.'s best interests against father's interests in visitation, and not whether visitation in the county jail would be detrimental to N.P.  (See *In re Jennifer G.* (1990) 221 Cal.App.3d 752, 756-757 (*Jennifer G.*).)

He argues that section 366.21, subdivision (h) supports his claim.  We disagree.  That section provides:  "[i]n any case in which the court orders that a hearing pursuant to Section 366.26 [to terminate parental rights] shall be held, it shall also order the termination of reunification services to the parent or legal guardian.  *The court shall continue to permit the parent or legal guardian to visit the child pending the [section 366.26] hearing unless it finds that visitation would be detrimental to the child.*"  (Italics added.)  On its face, then, section 366.21, subdivision (h) only requires the juvenile court to find that visitation would be detrimental to the child if *both* (a) the juvenile court orders a termination of parental rights hearing and (b) the juvenile court orders that the parent will have no visitation.  (Cf. *In re Manolito L.* (2001) 90 Cal.App.4th 753, 759-760.)

The juvenile court ordered no reunification services, nor could it do so; N.P. was always in mother's custody.  (§ 16507, subd. (b).)  And the case was never set for permanency planning under section 366.26.  "[T]he focus of dependency proceedings 'is to reunify the child with *a parent*, when safe to do so for the child. [Citations.]  The goal of dependency proceedings—to reunify a child with at least one parent—has been met when, at disposition, a child is placed with a former custodial parent and afforded family maintenance services."  (*In re Pedro Z.* (2010) 190 Cal.App.4th 12, 20, original italics.)

Father correctly contends that "[p]arents have the right of visitation from the fact of parenthood."  (See *Jennifer G., supra,*

6

221 Cal.App.3d at p. 756.)  "Thus, the court must define the rights of the parties to visitation."  (*Id.* at p. 757.)  To define the rights of the parties to visitation in this particular context, the juvenile court must "balanc[e] . . . the interests of the parent in visitation with the best interests of the child.  In balancing these interests, the court in the exercise of its judicial discretion should determine whether there should be any right to visitation and, if so, the frequency and length of visitation.  The court may, of course, impose any other conditions or requirements to further define the right to visitation in light of the particular circumstances of the case before it."  (*Ibid.*)

The juvenile court was not required to make a finding of detriment to N.P. before declining to allow visitation at county jail, but rather was required only to balance father's interest in visitation against N.P.'s best interests.  Here, the juvenile court considered the particular circumstances—father had already attempted to coach N.P. about how to testify in court, and in advance of father's criminal proceedings about the circumstances that gave rise to this dependency proceeding the juvenile court did not want to place N.P. in that situation—and denied father's request that visitation be ordered at father's place of incarceration.  As did the court in *Jennifer G.*, we note that while father does not "have the power to redefine the right to visitation, [he] may petition the court to modify its order defining that right" should the circumstances informing the juvenile court's discretion change.  (*Id.* at p. 757; § 388.)

We conclude that the juvenile court applied the correct standard to its determination whether to allow father visitation in county jail in advance of father's criminal proceedings; no

7

finding of detriment under section 366.21, subdivision (h) was required. And we find no abuse of the juvenile court's discretion.

## DISPOSITION

The juvenile court's order is affirmed.
NOT TO BE PUBLISHED


CHANEY, J.

We concur:


ROTHSCHILD, P. J.


BENDIX, J.