Filed 3/15/24  In re I.C. CA2/2

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re I.C., a Person Coming Under the Juvenile Court Law. | B329754 (Los Angeles County Super. Ct. No. 19CCJP01580C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. ISIS C., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Debra R. Archuleta, Judge.  Affirmed.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica S. Mitchell, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

This is the fourth appeal that Isis C. (mother) has filed in a dependency case spanning over three years. Mother is challenging the juvenile court's exit order giving Sergio H. (father) sole physical custody of their child (I.C., born April 2017) under Welfare and Institutions Code section 362.4[1] after terminating dependency jurisdiction. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND[2]**

## I.  Facts and Prior Proceedings

I.C. is the only child of mother and father. Mother also has M.R., an older child with Matias R. (Matias). In early 2019, I.C. resided with mother, Matias, and M.R. At the time, mother had full custody of I.C. Father had visitation.

In May 2019, the juvenile court sustained an amended petition filed by the Department of Children and Family Services (DCFS) alleging incidents of domestic violence, which rendered

_____

[1] Undesignated statutory references are to the Welfare and Institutions Code.

[2] These "Facts and Prior Proceedings" are taken from *Los Angeles County Department of Children and Family Services v. Isis C.* (Nov. 3, 2023, B322012, B323652, B325250) [nonpub. opn.] (*In re I.C.*).

jurisdiction appropriate.  (§ 300, subds. (a) & (b)(1).[3])  I.C. was declared a dependent of the court, removed from mother's custody, and released to father.  Mother was permitted monitored visits.  Mother's case plan required her to participate in a batterers' intervention program, parenting classes, and individual counseling sessions.  The court also barred any visits between Matias and I.C.[4]

On September 20, 2020, the juvenile court sustained a petition alleging father's physical abuse of I.C.  (§ 300, subd. (b)(1).)  Mother was a nonoffending parent.  I.C. was removed from father and placed with mother.  Family maintenance services were ordered for mother.  Enhancement services and monitored visits were ordered for father.

In September 2021, mother pleaded no contest to a section 342 petition alleging she failed to protect the children by allowing Matias unlimited access and Matias physically abused mother in the children's presence.  (§ 300, subd. (b)(1).)  Mother also pleaded no contest to a section 387 petition alleging, in part, she violated court orders by allowing Matias's contact with I.C. and she failed to maintain consistent contact with service providers. The court ordered I.C. removed from mother and placed with a relative.  Mother was ordered to attend domestic violence counseling, parenting classes, family reunification services, and individual counseling.

In May 2022, the juvenile court held a section 366.21 hearing for I.C. and rejected mother's request to have I.C.

---

[3] Dependency orders made for mother and Matias concerning M.R. are not part of this opinion.

[4] Matias had harmed I.C. when I.C. was two years old.

3

returned to her. The court found mother failed to make sufficient progress after more than three years on her case plan. A DCFS report stated father completed his case plan and was able to provide a safe and nurturing home for I.C. The court terminated the suitable placement order for I.C. and ordered the child returned to father with family maintenance services.

## II. Facts and Current Proceedings

A November 2022 DCFS report stated I.C. felt safe and happy in father's home. Father made sure I.C.'s basic needs were met. Father wanted jurisdiction terminated and to have full custody of I.C. He was willing to co-parent with mother and to have I.C. maintain a relationship with her.

By this time, mother had completed her court-ordered services and had remained in consistent contact with DCFS. Mother was fine with I.C. residing with father, but she still wanted to reunify with the child. Mother was working to improve her strained relationship with I.C. and to provide structure. Mother's interactions with I.C. were appropriate, and I.C. enjoyed their visits.

Mother continued her employment and provided basic needs for herself and her new baby. Mother had secured temporary housing and was looking for permanent housing.

On December 14, 2022, the juvenile court agreed mother could have unmonitored three-hour visits twice weekly with I.C. The court gave DCFS discretion to allow overnight visits. Mother was now residing in a two-bedroom apartment with her new baby, her cousin, and her cousin's two children. The home was clean and appropriate. Mother was still seeking permanent housing.

4

During a monitored visit, DCFS reported I.C. called mother by her first name, appeared disrespectful, and needed repeated redirection from mother. DCFS observed I.C. listened to father, who provided I.C. with structure and appropriate redirection. Father also ensured I.C. received necessary treatment as a special needs child.

In a submitted case form filed on March 22, 2023, DCFS recommended the juvenile court terminate jurisdiction and grant the parents joint legal custody and father sole physical custody of I.C. Mother was to have unmonitored visits. At mother's request, the juvenile court set a contested section 364 hearing on custody issues. The court ordered DCFS to provide an updated report on mother's visits with I.C.

In a last-minute information report filed for the continued section 364 hearing, DCFS reported a visitation schedule was created to accommodate mother's Sundays off from work. The parents agreed mother was to have unmonitored visits with I.C. every Sunday beginning on February 19, 2023.

On April 16, 2023, mother acknowledged having missed three visits with I.C. Mother explained her baby had been sick and she had to work. Father permitted mother to make up these missed visits during I.C.'s spring break.

During an unannounced visit to mother's home, DCFS noted M.R. and I.C. appeared excited about mother's plans for a painting project after breakfast. I.C. exclaimed, "[M]other is the best mother in the whole-wide world." I.C. wanted overnight visits with mother and M.R.

Father later told DCFS of his concern that overnight visitation may result in I.C. having contact with Matias. Mother stated she understood the no-contact order between Matias and

5

I.C. was still in effect. Mother agreed to pick up I.C. at 7:00 p.m. on Saturday and return the child to father at 7:00 p.m. on Sunday.

At the contested section 364 hearing on May 10, 2023, mother and father each appeared with counsel. Following argument by counsel, the juvenile court terminated jurisdiction over I.C. and issued a custody order. The order provided the parents joint legal custody and father sole physical custody of I.C. Mother was granted unmonitored overnight visits from 7:00 p.m. Saturday to 7:00 p.m. Sunday.

Mother timely appealed.

## DISCUSSION

Mother does not dispute the juvenile court's termination of dependency jurisdiction. Instead, she contends the court erroneously granted father sole physical custody of I.C.

## A.    Applicable Law and Standard of Review

"When a juvenile court terminates its jurisdiction over a dependent child, it is empowered to make 'exit orders' regarding custody and visitation." (*In re T.H.* (2010) 190 Cal.App.4th 1119, 1122; see also §§ 364, subd. (c), 362.4.) After placing a child with a nonoffending parent pursuant to section 361.2, the court is expressly authorized to issue exit orders providing "that the [nonoffending] parent become legal and physical custodian of the child" and "may also provide reasonable visitation by the noncustodial parent." (§ 361.2, subd. (b)(1).) "[I]n making exit orders, the juvenile court must look at the best interests of the child." (*In re John W.* (1996) 41 Cal.App.4th 961, 973; see also *In re T.S.* (2020) 52 Cal.App.5th 503, 513.)

We review exit orders " 'for abuse of discretion [citation] and may not disturb the order unless the court " ' "exceeded the

6

limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." ' " ' " (*In re M.R.* (2017) 7 Cal.App.5th 886, 902; see also *In re J.M.* (2023) 89 Cal.App.5th 95, 112.)

**B.     No Abuse of Discretion**

Mother contends the juvenile court erred in failing to grant her and father joint physical custody of I.C.  We disagree.

In rendering its decision, the juvenile court found mother worked three days a week, yet had "constant excuses" for missing visits with I.C. as she had with M.R.  This had become a pattern.  The court acknowledged mother was "a single mom caring for a small child," but that did not excuse her failure to provide her older children with "the same kind of attention and visitation" as previously ordered.

On the other hand, the record showed father considered I.C.'s welfare a priority.  He provided I.C. with stability, continuity, and safety and ensured I.C.'s special needs were appropriately addressed with services.  There were numerous indications that I.C. was happy and thriving in father's care.  Therefore, granting father sole physical custody of I.C. was in the child's best interests.

Mother resists this conclusion by arguing she had fully complied with her case plan and had been proclaimed by I.C. as "the best mother in the whole-wide world."  We applaud mother's completion of her case plan and positive interactions with I.C.  However, if a child is already placed in the custody of a parent, the juvenile court "is not concerned with reunification" (*In re Pedro Z.* (2010) 190 Cal.App.4th 12, 20), as the goal of dependency proceedings "is to reunify the child with *a* parent." (*In re Adrianna P.* (2008) 166 Cal.App.4th 44, 59, italics added.)

In this case, the court's decision to grant father sole physical custody was not an abuse of discretion.

## DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.