Filed 11/19/20  In re V.C. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re V.C., a Person Coming Under the Juvenile Court Law. | B303874 (Los Angeles County Super. Ct. No. 19LJJP00740) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. CHAD C., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Stephanie M. Davis, Judge Pro Tempore. Affirmed in part and vacated in part.

Donna P. Chirco, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel, and Tracey Dodds, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Chad C. (Father) appeals from the juvenile court's assertion of jurisdiction over his infant daughter, V.C., under Welfare and Institutions Code[1] section 300, subdivision (b)(1), finding that Angel K.'s (Mother's) substance abuse prior to and during pregnancy, as well as her history of mental illness, created a substantial risk of serious physical harm to the child, and Father failed to protect the child from the risks created by Mother. Father contends the evidence is insufficient to support these findings because by the time of the jurisdictional hearing, V.C. was no longer at risk of harm from Mother's methamphetamine and marijuana use, nor was V.C. at risk from Mother's bipolar disorder. Father also challenges the juvenile court's finding that he failed to protect V.C. from Mother because he initially endorsed Mother breastfeeding with THC in her system. Finally, Father challenges the court's disposition order that Mother stay away from the family home.

We affirm in part and vacate in part. We affirm the court's assertion of jurisdiction over V.C. because Mother's use of methamphetamine and marijuana during her pregnancy is substantial evidence that V.C. was at risk of serious harm

---

[1] Subsequent undesignated statutory citations are to the Welfare and Institutions Code.

without supervision by the Department of Child and Family Services (Department). However, we vacate two jurisdictional findings from the sustained section 300 petition. As to Father, we vacate the juvenile court's finding that he failed to protect V.C. from Mother because the evidence showed, to the contrary, that by the time of the jurisdiction hearing he was taking active steps to protect the child from the risk of serious harm identified in the sustained petition. As to Mother, we vacate the finding that Mother's history of mental illness placed V.C. at risk of serious harm because there was no evidence Mother's bipolar disorder was causing any risk of harm to V.C. We do not reach Father's challenge to the court's disposition order because the issue is now moot.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Events Leading up to Dependency Jurisdiction

After V.C. was born in 2019, she was placed on a hospital hold pending a referral to the Department based on a concern about Mother's drug use. Although V.C.'s toxicology screen was negative for all substances, Mother's toxicology screen was positive for THC. Mother admitted she had used marijuana while pregnant. Mother also admitted using methamphetamine four months prior to giving birth, but insisted she had since stopped using that substance.

During an interview with a hospital staff member on the day V.C. was born, Mother indicated she had been diagnosed with bipolar disorder seven years prior, when she was 17 years old. The staff member reported Mother appeared to rapidly cycle between emotions, and exhibited memory problems and cognitive impairment. The staff member characterized Mother's responses as having a "delay."

3

The social worker was informed that Mother's treating physician instructed her to feed V.C. with formula and dump her breast milk for 21 days because of the THC in Mother's system. While interviewing Mother at the hospital on October 6, 2019, the social worker learned that Mother was not feeding the infant formula. When confronted by the social worker about breastfeeding with THC in her system, Mother stated she disagreed with her treating physician's instructions. She explained that she previously had been advised by another doctor "that it was ok to smoke marijuana while pregnant."[2]

The social worker also was concerned that Mother was not responding appropriately to her baby's cues for hunger. When Mother attempted to breastfeed, the social worker interrupted her and asked a nurse to bring in formula, which Mother then used to feed V.C.

Father rebuffed the social worker's concerns that Mother was not exhibiting appropriate maternal attentiveness to her newborn's needs and was "adamant" that Mother would eventually learn to be a great mother; "trial and error," Father insisted, is part of the process, citing his experience in raising two children.

Father disclosed he was a current user of marijuana. Father insisted that it was not dangerous for Mother to breastfeed while she was using marijuana, citing previous advice received from a medical doctor.

---

[2] We note the record does not contain any medical paperwork or testimony substantiating the parents' claims that a medical professional advised it was safe to use marijuana while pregnant.

4

The Department's request for emergency detention was granted. It detained V.C. from her parents on October 6, 2019. Two days later, the Department filed a section 300, subdivision (b)(1), petition naming both parents as offending parents.

At the October 9, 2019, detention hearing, the court ordered V.C. detained from both parents, ordered Mother not to breastfeed, and gave the parents monitored visitation.

The Department conducted a pre-release investigation of the family's home on October 18, 2019. Father was employed and working in Bakersfield. The family home included "a crib, playpen, dresser, and ample clothes, diapers, and formula for the minor." There was also "ample food" in the refrigerator and all utilities were functioning. The social worker observed Mother engaging in skin-to-skin bonding with V.C., appropriately changing her diaper, and effectively swaddling her. Father also held V.C. and engaged in "baby talk."

However, because Father again stated that there was nothing wrong with the parents using marijuana in the home, the Department requested more time to investigate the family before releasing V.C.

At the pre-release investigation hearing held on October 23, 2019, the court released V.C. to Father's care over the Department's objection, but conditioned its order on the Department's confirmation that Mother had fully moved out of the family home. The court ordered Mother to continue drug testing, and ordered that she receive visitation three times per week. The court ordered Father to participate in the National Alliance Mental Illness program, and to abstain from smoking marijuana.

Before releasing V.C. to Father, the Department interviewed both parents on October 28, 2019.  Mother stated she started using methamphetamine three years prior, but had "been off drugs about a year."  She stated Father was actively helping her remain abstinent.  The last time she used methamphetamine was sometime in July 2019.  She acknowledged this was during her pregnancy but claimed her prenatal use was inadvertent and that her test in July was positive due to the length of time it takes methamphetamine to leave one's system.  She emphasized that she tested negative at every subsequent test administered at her OB/GYN's office.

Mother admitted to steady marijuana use since she was 17 years old.  As for the disagreement she had with medical staff over breastfeeding with THC in her system, she said she was following the advice of both Father and her pediatrician.  She disagreed with medical staff because she "do[esn't] easily believe people . . . so what the pediatrician said . . . [Father] thought [it] was okay.  I went with what [F]ather said."  She offered that her apparently delayed and confused responses during her bedside interview may have been the result of the trauma of delivery and the pain medicine she was given.  Mother had already enrolled in individual psychiatric care with the encouragement of Father.

During Father's interview, he stated Mother "was on meth for a good four years," including "when we met."  He sometimes saw her "sitting in the dark, not feeding herself."  But, Father did not "want to be a father figure for her," and so he did not initially intervene.  "But when [Father] knew [Mother] was pregnant, [he] put [his] foot down."  Father indicated he had told Mother that he would fight for sole custody of their daughter if she used again. He indicated Mother tested positive for methamphetamine twice

6

during her visits to the gynecologist, but had since tested negative at every appointment.

During the interview on October 28, Father, like Mother, now recognized Mother should not be breastfeeding with THC in her system. As for his previous breastfeeding "advice," Father stated he knew marijuana was legal and he had "seen studies that say there's nothing to show it causes harm to the baby." Nevertheless, Father now stated: "I admit that was my fault." He thought "the 'pump and dump' was recommended but not required."

Father had been "on and off" marijuana "throughout his life." But, he insisted, "I'm very willing to stop marijuana completely for [V.C.]" He handed the social worker a negative drug test and indicated he would "test as many times as the Court says to." He had already reached out to Project Fatherhood and provided the social worker with a contact there for confirmation.

As to current drug use, the Department noted Mother had consistently tested negative for all substances. Although Father tested positive for marijuana, he did so "at [a] very low level."

The Department noted in this report that the parents were being cooperative with the investigation and were ready to comply with any court orders. The Department stated that the evidence supported the parents' statements that Mother stopped using methamphetamine around the time she began to receive prenatal care, moved in with Father, and was given an ultimatum by Father to stop using methamphetamine or Father would seek custody of the child at the time of the child's birth.

The Department was satisfied that Mother moved out of the family home as ordered by the court, and released V.C. to Father.

## B.    The Petition for Jurisdiction

On December 4, 2019, the juvenile court sustained an amended section 300, subdivision (b)(1), petition on two counts. The court found count b-1 true, alleging that Mother failed to protect V.C. and was unable to provide regular care for V.C. based on her history of substance abuse involving methamphetamine and marijuana, her use of both substances during her pregnancy, and her decision to breastfeed V.C. at the hospital against medical advice after testing positive for marijuana at V.C.'s birth.

As to Father, the court found count b-1 true, finding that he failed to protect V.C. from Mother's substance abuse, explaining: "The father stated his belief with respect to breastfeeding and smoking marijuana after being advised by . . . the nurses and doctors that that was harmful to the baby while there was still drugs in the [m]other's system, him stating that he didn't understand why there was a problem with the [m]other breastfeeding and his indication—well, his encouragement, actually, of the mother breastfeeding."

As to Mother, the court found count b-3 true, finding that she had a history of mental illness, stemming from her teenage diagnosis of bipolar disorder, rendering her incapable of providing care and supervision.[3]

_____

[3] The court dismissed count b-2, alleging Father had a history of substance abuse creating a detrimental environment for the minor, without prejudice.

## C. Disposition

The court proceeded to disposition.

Mother requested that she be allowed to move back into the family home and Father joined in this request. The court denied the request, finding by clear and convincing evidence pursuant to section 361, subdivision (c), that there would be a substantial danger to V.C. if she were returned to Mother, and there were no reasonable means to protect the child without removal from her custody.

The court ordered Mother to participate in an alcohol and drug program and to attend 12-step meetings. The court also ordered Mother to participate in parenting classes, individual counseling, and a psychiatric evaluation. Mother's visitation remained monitored.

The court ordered Father to drug test upon reasonable suspicion of drug use. The court further ordered Father to participate in individual counseling.

The court ordered family maintenance services for both parents, and also ordered family preservation for Father.[4] The court allowed Mother to enter the family home only in order to participate in family preservation with Father.

_____

[4] When a child is removed from a parent's or guardian's custody, the juvenile court is required to order the Department to provide child welfare services to the child and the child's parents or guardians for the purpose of facilitating reunification of the family. (§ 361.5, subd. (a).) Where, as here, the child is left in the care of a former custodial parent, the court orders "family maintenance services" pursuant to section 362, subdivision (c). The purpose of these services is to maintain the child in his or her own home. (See § 16506.)

9

Father timely appealed.

**D.     Factual and Procedural Background Post-filing of the Notice of Appeal**

On our own motion, we judicially notice the following three documents: (1) the juvenile court's February 3, 2020, and (2) May 7, 2020, minute orders, as well as (3) the Department's May 19, 2020, status review report.  (See Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

First, the court's February 3, 2020, minute order permits Mother "to return to and reside in the family home over the objection of the Department."  This revision to its disposition order moots the third issue raised by Father in his appeal, challenging the order that Mother stay away from the family home.

Second, the court's May 7, 2020, minute order "continue[s] this matter for a [section] 364 hearing" to March 2, 2021.[5]

Third, the Department's May 19, 2020, status review report indicates that the Department has observed substantial progress

---

[5] Section 300 requires juvenile courts to hold status review hearings at least every six months where, as here, the dependent child is ordered at disposition to remain in the custody of a custodial parent and is given supportive services.  (§ 300, subd. (a).)  Where, as here, "the child remains in a parent's home, the court reviews the status of the case every six months under section 364."  (*In re Pedro Z.* (2010) 190 Cal.App.4th 12, 20; see generally, Juvenile Dependency Practice (Cont.Ed.Bar 2018) § 6.1, pp. 497-502.)  Section 300, subdivision (c), requires the court at this hearing to determine whether continued jurisdiction is necessary.  (See *In re N.O.* (2019) 31 Cal.App.5th 899, 922.)

in the family and has changed its recommendation to termination of dependency jurisdiction.

The Department noted that Father has continued to provide V.C. with a "stable home and is meeting the child's basic needs." Mother has continued to test negative for all substances. Mother has completed most of her case plan including parenting classes and a psychiatric evaluation and is "actively participating" in family preservation. V.C. has continued to develop age appropriately and is receiving required medical exams. Family preservation personnel reported that the parents are "cooperative and open to learning new skills" during their sessions.

Based on the foregoing, the Department now recommends "jurisdiction be terminated with a Family Law Order, granting joint legal, and sole physical custody to [F]ather . . . . Mother . . . be granted unmonitored visitation."

## DISCUSSION

### A.    Appellate Jurisdiction

Father alone appeals the jurisdiction and dispositional orders issued in this case. The failure of both parents to appeal a finding of jurisdiction requires that we ensure appellate review is appropriate.

Dependency jurisdiction under section 300 is over the *child*, not *the parents*, as a result of the harm or risk of harm the child faces. (See, e.g., *Kern County Dept. of Human Services v. Superior Court* (2010) 187 Cal.App.4th 302, 310.) Because the juvenile court assumes jurisdiction over the child, not over the parents, jurisdiction may exist based on the conduct of one parent alone. (See § 302, subd. (a); *In re John S.* (2001) 88 Cal.App.4th 1140, 1143.) "For this reason, an appellate court may decline to

11

address the evidentiary support for any remaining jurisdictional findings once a single finding has been found to be supported by the evidence." (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1492.)

However, we may exercise our discretion and reach the merits of a single parent's challenge to any jurisdictional finding when the finding (1) serves as the basis for dispositional orders that are also challenged on appeal (see, e.g., *In re Alexis E.* (2009) 171 Cal.App.4th 438, 454), (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings (see, e.g., *In re D.C.* (2011) 195 Cal.App.4th 1010, 1015; see also *In re I.A.*, *supra*, 201 Cal.App.4th at p. 1494), or (3) "could have other consequences for [the appellant], beyond jurisdiction." (*In re I.A.*, *supra*, at p. 1493.)

We exercise our discretion to reach the merits of Father's appeal for three reasons. First, the Department does not challenge Father's appeal of dependency jurisdiction over V.C. by citing Mother's failure to join, but instead, defends jurisdiction on the merits. Second, since the Department's current recommendation is to terminate jurisdiction, review on the merits now will provide additional direction to the dependency court once it is again able to schedule the pending section 364 hearing. Third, the outcome of this appeal is the difference between Father being an "offending" parent versus a "non-offending" parent. Such a distinction may have far reaching implications with respect to future dependency proceedings in this case and Father's parental rights. We have exercised our discretion to reach the merits of a single-parent appeal for this reason before, and we do so here. (See, e.g., *In re Quentin H.* (2014) 230 Cal.App.4th 608, 613.)

12

**B.     Applicable Law and Standard of Review**

  1. *Standard of Review*

  We review the trial court's jurisdictional findings for substantial evidence.  (*In re J.N.* (2010) 181 Cal.App.4th 1010, 1022.)  Under this standard, " 'we must uphold the . . . [jurisdictional] findings unless, after reviewing the entire record and resolving all conflicts in favor of the respondent and drawing all reasonable inferences in support of the judgment, we determine there is no substantial evidence to support [them].' " (*Ibid.*)

  2. *Section 300, Subdivision (b)*

  Section 300, subdivision (b), allows a child to be adjudged a dependent of the juvenile court when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse."  (*Id.*, subd. (b)(1); *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1215.)

  There are "three elements for jurisdiction under section 300, subdivision (b), namely, (1) neglectful conduct or substance abuse by a parent in one of the specified forms, (2) causation, and (3) serious physical harm to the child, or a substantial risk of such harm."  (*In re Rebecca C.* (2014) 228 Cal.App.4th 720, 724-725.)

  In deciding whether there is a substantial risk of serious physical harm, courts evaluate the risk that is present at the time of the jurisdiction hearing.  (*In re Christopher R., supra*, 225

13

Cal.App.4th at pp. 1215-1216.) "While evidence of past conduct may be probative of current conditions, the question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824.) Thus, "[a] parent's ' "[p]ast conduct may be probative of current conditions" if there is reason to believe that the conduct will continue.' [Citation]." (*In re Christopher R., supra,* 225 Cal.App.4th at p. 1216.)

## C.   Substantial Evidence Supports Dependency Jurisdiction over V.C.

Dependency jurisdiction "must be based on substance *abuse*; mere substance *use* is not sufficient for jurisdiction. [Citation.] However, the law is not in agreement on when substance use reaches the point of substance abuse." (*In re J.A.* (2020) 47 Cal.App.5th 1036, 1046, citing *In re Drake M.* (2012) 211 Cal.App.4th 754, 764 (*Drake M.*).) Despite this lack of agreement, as we explain, the facts support the juvenile court's assertion of jurisdiction over V.C. based on substance abuse as a result of Mother's prenatal methamphetamine and marijuana use.

Mother used methamphetamine intermittently over a period of three years, including while she was four months pregnant; she returned to using methamphetamine even though her use had negatively impacted her relationship with Father in the past; she used marijuana regularly for seven years and tested positive for THC at the time of V.C.'s birth. Mother also admitted she once fell unconscious on the road in Las Vegas, was found to be on methamphetamine, and went into a drug treatment program for about two weeks. This longstanding drug use provides substantial evidence to support the trial court's

14

finding of substance abuse. (See *In re Christopher R.*, *supra*, 225 Cal.App.4th at pp. 1218-1219 [the mother's repeated cocaine use and ingestion of the drug while pregnant amounted to substance abuse within the meaning of the DSM-IV-TR]; see also *Drake M.*, *supra*, 211 Cal.App.4th at p. 766 [providing non-exclusive criteria to distinguish substance "abuse" from substance "use"]; cf. *In re J.A.*, *supra*, 47 Cal.App.5th at p. 1047 [the mother's use of edible marijuana during pregnancy to address pregnancy symptoms, without any evidence that she became impaired, did not support a finding of substance abuse].)

Despite a finding of parental substance abuse, "it does not always follow that such a finding means that the parent or guardian at issue is unable to provide regular care resulting in a substantial risk of physical harm to the child." (*Drake M.*, *supra*, 211 Cal.App.4th at p. 766.) In *Drake M.*, the court held that in cases involving children of "tender years," a finding of substance abuse "is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of physical harm." (*Id.* at p. 767.)

While the presumption articulated in *Drake M.* applies here, additional evidence supports the juvenile court's finding that Mother's substance abuse gave rise to a substantial risk of harm to V.C.

Father told the social worker that when Mother was using methamphetamine, it affected the performance of her basic life functions: she would become incoherent and was sometimes unable to care for her own hygiene. Father described coming home to find Mother sitting in the dark, not having eaten. These behaviors, in combination with Mother's lengthy history of prenatal methamphetamine and marijuana use, her continued

15

use of marijuana during the end stages of her pregnancy, and her persistence in breastfeeding V.C. before the THC was eliminated from her system, contrary to medical advice, qualifies as past conduct probative of future behavior justifying assertion of dependency jurisdiction, even though Mother was not an active user at the time of the jurisdiction hearing. (See *In re Christopher R.*, *supra*, 225 Cal.App.4th at p. 1219 [the mother's cocaine use during the last months of her pregnancy confirmed her poor judgment and willingness to endanger her children's safety due to substance abuse"]; cf. *In re J.A.*, *supra*, 47 Cal.App.5th at p. 1050 [the mother's use of edible marijuana while pregnant was insufficient to trigger dependency jurisdiction where there was no evidence this harmed either of her children or posed a substantial risk of harm]; *In re Rebecca C., supra,* 228 Cal.App.4th at p. 728 [reversing assertion of § 300, subd. (b), jurisdiction for lack of evidence that the mother's mere drug use was causing or created a risk of causing physical harm to the child].)

## D. The Evidence is Not Sufficient to Support the Finding that Father Failed to Protect V.C. from Mother's Substance Abuse

Father argues the juvenile court erroneously found that he failed to protect V.C. due to his knowledge of Mother's substance abuse and his disregard for the medical advice concerning breastfeeding with THC in her system.

By the time of the jurisdictional hearing, many of the stated concerns of the Department had been met: the family had complied with the court's order that Mother move out of the family home. Mother had tested negative for all substances and she had enrolled in individual psychiatric care. The Department

16

reported the parents were cooperative and eager to obey any court orders.

Father indeed twice stated to social workers that he believed Mother should be free to breastfeed with THC in her system: once at the October 6, 2019, hospital interview and a second time at the October 18, 2019, pre-release interview. But, at the very next interview with social workers on October 28, 2019, Father retracted his position and conceded he was wrong. As to his own marijuana use, he vowed to abstain entirely if ordered, handed the social worker a negative test, and then tested positive for marijuana once at a "low level." There is no evidence to indicate the Department ever asked him to test again, and the juvenile court dismissed count b-2 alleging that he had a history of substance abuse rising to the level of placing V.C. at substantial risk of serious harm.

Father was steadfast in his objection to Mother's methamphetamine use, breaking off their relationship once before due to her use. When she used methamphetamine while pregnant with V.C., he told her he would fight for sole custody, leading Mother once again to discontinue her use. He was aware that she used marijuana while pregnant, but he understood that Mother's prenatal care provider did not object to her use of marijuana. Although Father initially supported Mother breastfeeding V.C. before the THC was eliminated from her system based on "studies" he had reviewed, he retracted this position soon after V.C.'s birth. After V.C. was released to his care, not only is there no evidence to show that Mother continued to breastfeed while using marijuana, there is affirmative evidence she did not, based on her consistently negative drug test results. Indeed, in its last filing before the jurisdiction hearing,

17

the Department advised the juvenile court that Mother had made progress in addressing her substance abuse issues with the support of the Father. The Department also confirmed that as of October 28, 2019, Father was purchasing formula for V.C.

While Mother's history of substance abuse supported a finding of a risk of harm to V.C., Father's conduct is distinguishable. In response to his knowledge of Mother's drug use, he actively intervened twice to stop her use of methamphetamine, he quickly acknowledged the risk posed by using marijuana while breastfeeding, and he took steps to ensure Mother did not continue to use marijuana after V.C.'s birth. These facts do not support the conclusion that Father placed V.C.'s physical health at risk through his failure to protect. To the contrary, as of the date of the jurisdiction hearing, Father clearly understood that Mother should not breastfeed with THC in her system. Therefore, the juvenile court's jurisdictional finding that Father failed to protect V.C. is not supported by substantial evidence. (See *In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1397 [the risk of future serious physical harm "is determined as of the time of the jurisdictional hearing"].)

We therefore vacate the reference to Father being an offending parent from count b-1 of the sustained section 300 petition.

E. **The Evidence is Not Sufficient to Support the Finding that Mother's Mental Health Condition Created a Risk of Harm**

Father also objects to the juvenile court's finding as to count b-3, which rested on its review of Mother's mental health condition. The findings are predicated upon the social worker's bedside interview of Mother at the hospital shortly after giving

18

birth.  There, after Mother admitted she was diagnosed with bipolar disorder as a teenager, the social worker observed Mother's mood was rapidly cycling and her cognitive functions appeared impaired because her responses were "delayed."  By the time of the jurisdiction hearing, however, Mother had initiated individual psychiatric counseling and had the full support of Father.  At the jurisdiction hearing, the Department introduced no evidence that Mother's mental health disorder was causing any risk of harm to V.C.

It is true that Mother admitted receiving a diagnosis of bipolar mood disorder at age 17.  For purposes of discussion, we assume, based on her admission, that Mother continues to suffer from bipolar disorder.  Nonetheless, even when a parent suffers from a mental illness, "the law is settled that harm may not be presumed from the mere fact of a parent's mental illness." (*In re A.L.* (2017) 18 Cal.App.5th 1044, 1050.)

In the juvenile court, Mother had already initiated individual psychiatric counseling.  There was no evidence to indicate that she required treatment for the behaviors that had surfaced while she was a teenager, seven years before V.C.'s birth.  There was no evidence that Mother had been prescribed medication or had refused to take prescribed medication.  Nor did Mother have an episode—manic or otherwise—resulting from her bipolar disorder.  There was no evidence that her disorder resulted in any behavior that posed a risk of harm to anyone prior to V.C.'s birth.  Mother's delayed responses to questioning in her hospital bed after giving birth with the aid of pain medication does not support the conclusion that she was failing to treat an active mental disorder.  Indeed, the Department never

observed Mother exhibiting these alleged emotional and cognitive problems during any of their subsequent interviews with her.

In summary, the facts concerning Mother's mental health disorder are insufficient to support the juvenile court's finding that Mother's mental health condition created a substantial risk of physical harm to V.C. (See *In re A.L.*, *supra*, 18 Cal.App.5th at p. 1051 [reversing assertion of dependency jurisdiction where there was no evidence the father or the minor child were at risk of serious physical harm as a consequence of the mother's schizophrenia, where she once suffered a manic episode after failing to take prescribed medication and began throwing objects].) Therefore, we vacate count b-3 in the sustained section 300 petition in its entirety.

We do not reach Father's challenge to the court's dispositional order that Mother stay away from the family home because that order has been rescinded.

## DISPOSITION

The order is vacated as to the jurisdictional finding in count b-3 and to that portion of count b-1 that finds Father failed to protect the minor child.  In all other respects, the order is affirmed.

NOT TO BE PUBLISHED


FEDERMAN, J.*


We concur:



ROTHSCHILD, P. J.



CHANEY, J.

---

\* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.