Filed 12/23/22  In re M.M. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re M.M., a Person Coming Under the Juvenile Court Law. | B315802 (Los Angeles County Super. Ct. No. 21CCJP03593A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. JESSICA M., Defendant and Appellant; JUSTIN M., Defendant and Respondent. | |

APPEAL from orders of the Superior Court of Los Angeles County. Jean M. Nelson, Judge. Affirmed.

Tracy M. De Soto, under appointment by the Court of Appeal, for Defendant and Appellant.

Joseph D. MacKenzie, under appointment by the Court of Appeal, for Defendant and Respondent.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Stephen Watson, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

After removing three-year-old M.M. (born Mar. 2018) from the custody of Jessica M. (mother), the juvenile court terminated jurisdiction after granting Justin M. (father) physical custody of M.M. and issuing orders allowing mother monitored visitation and requiring her to complete drug treatment and other programs. Mother appeals from the order terminating jurisdiction and the exit orders, arguing that both orders amount to an abuse of the juvenile court's discretion. We disagree and affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

## I. The Inciting Incident

On July 30, 2021, the Los Angeles County Department of Children and Family Services (DCFS) received a referral alleging that mother had jumped out of a moving car and gotten into a car

driven by a stranger, all while holding M.M. in her arms. The referrer expressed concern about mother's sobriety, as mother had previously said that both she and M.M.'s maternal great-grandmother, who was driving the car when mother jumped out of it, used "speed."

A police officer who responded to the incident verified the referrer's story, adding that mother had also thrown a dog from the moving car, admitted to using drugs, and made claims about M.M. having been molested.

DCFS immediately detained M.M. A medical examination revealed that she had minor injuries on one knee.

Meanwhile, mother was placed on an involuntary psychiatric hold pursuant to section 5150 of the Welfare and Institutions Code.[1] The records of her stay indicate that although mother denied using drugs, she was likely high on both methamphetamine and marijuana when she was admitted. The reviewing psychiatrist quickly released mother, but opined that "she [was] not safe to take care of her child or have custody of her child." He recommended that mother start medication to treat depression and anxiety, and that she enroll in psychiatric counseling and substance abuse services.

The maternal great-grandmother confirmed that mother had leapt from the car while holding M.M. She said that she had offered to drive mother and M.M. around in an attempt to calm mother, who demanded to leave their house after receiving a distressing tarot reading from a local psychic. Maternal great-grandmother denied that she used or provided mother with drugs.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

3

Mother denied abusing or neglecting M.M., instead insisting that she leapt from the car to try to protect M.M. from the danger predicted by the psychic's tarot cards. She admitted that she "smoke[d] 'weed,'" but denied having mental health or substance abuse issues and said that any erratic behavior must have been caused by someone else lacing her marijuana with a different drug. Mother later agreed to, but failed to show for, an on-demand drug test.

## II.    DCFS Releases M.M. to Father

Father, who lived in northern California, told DCFS that he was shocked by mother's behavior. Although mother once told father that she had used methamphetamine with maternal great-grandmother, he had never seen her use drugs or witnessed any behavior that could indicate mental health issues, and he had believed that she was a fit parent. Father expressed immediate interest in reclaiming custody of M.M., agreed to undergo a home assessment, and arranged to make the seven-hour drive to pick her up.

When father arrived, he requested that DCFS release M.M. to him. He submitted an on-demand drug test, which confirmed that father was not using illegal drugs.[2]

## III.    Dependency Petition and Release to Father

On August 3, 2021, DCFS filed a section 300 petition alleging that mother's conduct placed M.M. at substantial risk of harm. The petition alleged three counts against mother under subdivision (b)(1) of section 300: Count b-1 alleged that mother, while using illicit substances and experiencing paranoid delusions, endangered M.M.'s health and safety by jumping from

---

[2]    Father tested positive for cannabis because he used a CBD oil tincture for pain relief.

4

a moving car with the child in her arms; count b-2 alleged that mother's current abuse of amphetamine, methamphetamine, and marijuana seriously impaired her ability to care for M.M.; and count b-3 alleged that mother's mental health issues, coupled with her refusal to obtain mental health treatment, rendered her unable to provide regular care for M.M.

At subsequent detention hearings, the juvenile court released M.M. to father for temporary detention and granted mother regular monitored visitation. DCFS was ordered to provide mother with available resources to help facilitate visitation, since M.M. had moved to reside in another county.

## IV. Jurisdiction Report

On September 15, 2021, DCFS reported that M.M. was living with father in Mono County. She appeared to be thriving, and there were no outstanding safety concerns. Father confirmed that he wanted full custody of M.M., and that her paternal grandparents were available to help him raise her.

DCFS interviewed M.M. about the inciting incident, and she said that her maternal great-grandmother "hit [mother] before, we got out of car. I, I, I me, no pants on. . . . I not having diapers on, just a tee shirt, and I was not in my car seat. I trouble."

Mother was visiting M.M. via video calls every other day, and said that she wanted to reunify with her. She reluctantly admitted that her behavior on the day of the incident was "wrong," but again tried to justify herself by saying that she had just gotten off the phone with a psychic who was telling her "crazy things." Mother insisted that "the car was not moving that fast" when she jumped out, and that she immediately "got into another car."

Mother said that she had "smoke[d] some weed," and admitted for the first time to having "a small trace of amphetamine," but maintained that she was mostly "just freaked out by what the psychic had said." She denied any intentional methamphetamine use, claiming that she didn't remember admitting that she used methamphetamine during her section 5150 hold. She also denied any history of mental health issues, and blamed her current problems on stress, particularly between her and father.

## V.   Jurisdiction and Adjudication

On October 4, 2021, the juvenile court held a joint jurisdiction and adjudication hearing. After entertaining argument on the question of jurisdiction, the court sustained counts b-1 and b-2 of the section 300 petition, as amended at the hearing.[3]

The juvenile court then removed M.M. from mother's custody, placed her with father, and granted mother regular supervised visitation. The court advised mother that visits would be cancelled if she showed up under the influence of drugs or alcohol. The court then ordered the preparation of a custody order to reflect these changes.

On October 12, 2021, the juvenile court received the custody order and terminated jurisdiction over M.M. The court attached a form to the order entitled "Reasons For No Or Supervised Visitation—Juvenile," specifying that mother's visits

---

[3]   Count b-2 originally included an allegation that father knew or reasonably should have known about mother's substance abuse, and failed to protect M.M. by allowing mother unfettered access to her. The juvenile court later struck this language from the petition.

would be supervised because mother had not completed or made substantial progress towards relevant rehabilitative services. (Capitalization and bolding omitted.) Specifically, the court ordered mother to complete a six-month long "full drug/alcohol program," submit to biweekly drug testing, complete an age-appropriate parenting class, undergo psychiatric evaluation, and participate in individual counseling "to address mental health issues, child protection, and the substance abuse."

The following week, the juvenile court entered the custody and visitation order and terminated its jurisdiction.

Mother timely appealed.

## DISCUSSION

Mother presents two basic arguments on appeal: (1) she contends that the juvenile court abused its discretion in terminating jurisdiction without affording mother an adequate opportunity to reunify with M.M.; and (2) she argues that the exit orders requiring mother to complete certain programs "unduly interfere[s]" with the family court's authority to modify custody or visitation rights going forward. We address each of these in turn.

## I. Termination of Dependency Jurisdiction

### A. *Relevant law and standard of review*

Section 361.2, subdivision (b)(1), states that if the juvenile court places a child with a parent with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of section 300, the court can terminate jurisdiction over the child. (§ 361.2, subd. (b)(l).) In considering that option, the juvenile court's primary focus is the best interests of the child. (*In re John W.* (1996) 41 Cal.App.4th 961, 965.) "When a juvenile court terminates its

7

jurisdiction over a dependent child, it is empowered to make 'exit orders' regarding custody and visitation." (*In re T.H.* (2010) 190 Cal.App.4th 1119, 1122; see also §§ 364, subd. (c), 362.4.)

We review the order terminating jurisdiction either for an abuse of discretion (*In re Holly H.* (2002) 104 Cal.App.4th 1324, 1327) or for substantial evidence (*In re Aurora P.* (2015) 241 Cal.App.4th 1142, 1156). Accordingly, we will not disturb the juvenile court's decision unless """the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citation].""" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.) Where substantial evidence supports the trial court's order, there is no abuse of discretion. (*In re Daniel C.H.* (1990) 220 Cal.App.3d 814, 839.)

B.  *Analysis*

After the juvenile court placed M.M. with her father, a nonoffending parent, it was fully authorized to terminate jurisdiction if termination would be in the best interests of the child. Here, the record provided every indication that M.M. was happy and thriving under father's care, and there were no outstanding safety concerns requiring the juvenile court's ongoing supervision of that placement.[4] Therefore, the juvenile court did not abuse its discretion in terminating jurisdiction.

---

[4]  Mother argues that her counsel raised concerns about "allegations of a car accident, where [father] fled the scene." M.M.'s maternal great-grandmother claimed that father had fled the scene of a car accident to avoid being charged with driving under the influence; however, DCFS's investigations concluded that her allegations were unsubstantiated. The juvenile court could reasonably have concluded that the evidence simply did not support mother's conclusion that father posed any safety risk to M.M.

8

Mother's three arguments against our conclusion are unavailing. First, mother argues that the juvenile court's termination of jurisdiction deprived her of an opportunity to reunify with M.M. and regain custody. However, if a child is already placed in the custody of a parent, the juvenile court "is not concerned with reunification" (*In re Pedro Z.* (2010) 190 Cal.App.4th 12, 20), as the goal of dependency proceedings "is to reunify the child with *a* parent." (*In re Adrianna P.* (2008) 166 Cal.App.4th 44, 59, italics added.) Instead, the court must determine "whether . . . dependency [jurisdiction] should be terminated or whether further supervision is necessary." (*In re Joel T.* (1999) 70 Cal.App.4th 263, 267.) "When deciding whether to terminate jurisdiction, the court must determine whether there is a need for continued supervision, not whether the conditions that justified taking jurisdiction in the first place still exist." (*In re Janee W.* (2006) 140 Cal.App.4th 1444, 1451.) In this case, the juvenile court appropriately determined that its supervision was no longer necessary, and it was therefore justified in terminating jurisdiction.

Second, mother argues that terminating jurisdiction was not in M.M.'s best interest, because it severed the child's loving and positive relationship with mother.[5] The premise of mother's

---

[5] Mother's rosy characterization of her relationship with M.M. is also problematic, in that it ignores how seriously her untreated substance abuse and paranoid delusions endangered M.M.'s health and safety. While mother's relationship with M.M. undoubtedly had positive aspects, the juvenile court could reasonably have concluded that mother's consistent minimization of her behavior rendered her more of a detrimental presence in M.M.'s life than a beneficial one. (*In re Gabriel K.* (2012) 203

9

argument is hollow, as the juvenile court did not sever M.M.'s relationship with her mother. On the contrary, its exit order explicitly maintained regular monitored visitation between mother and M.M. and ordered DCFS to provide mother with available resources to support visitation.

Lastly, mother claims that even if the juvenile court was authorized to terminate jurisdiction, its decision to simultaneously place conditions on mother's visitation rights rendered its termination order an abuse of discretion. Again, she is incorrect; the juvenile court has ample authority to impose limitations on an offending parent's contact with a dependent child before terminating jurisdiction. (*In re Destiny D.* (2017) 15 Cal.App.5th 197, 208; see also *In re Chantal S.* (1996) 13 Cal.4th 196, 204 ["[t]he juvenile court's determination, that continuation of dependency jurisdiction was at that time unnecessary for [minor's] protection, was in turn [properly] premised on the existence of the court's custody and visitation order"].)

## II.    Exit Orders

### A.    *Relevant law*

As noted above, a juvenile court may make "'exit orders' regarding custody and visitation" when terminating jurisdiction over a dependent child. (*In re T.H.*, *supra*, 190 Cal.App.4th at p. 1122.) "'The juvenile court has broad discretion to determine what would best serve and protect the child's interest and to fashion . . . order[s] in accordance with this discretion.'" (*In re Corrine W.* (2009) 45 Cal.4th 522, 532.)

Exit orders "become part of any family court proceeding concerning the same child and will remain in effect until they are

---

Cal.App.4th 188, 197 ["One cannot correct a problem one fails to acknowledge"].)

terminated or modified by the family court. [Citation.]" (*In re T.H.*, *supra*, 190 Cal.App.4th at p. 1123.) The family court may change the juvenile court's exit orders if (1) "there has been a significant change of circumstances," and (2) "modification . . . is in the best interests of the child." (§§ 302, subd. (d), 362.4, subd. (b); *Heidi S. v. David H.* (2016) 1 Cal.App.5th 1150, 1165.)

Although the juvenile court enjoys broad discretion in fashioning exit orders regarding custody and visitation, its discretion has limits. An exit order cannot restrict the family court's power to modify the exit order's custody or visitation provisions if the statutory prerequisites for such a modification have been met (namely, if the modification is shown in the best interests of the child based on changed circumstances). (*In re Cole Y.* (2015) 233 Cal.App.4th 1444, 1455–1457.) Thus, an exit order is invalid if it restricts a family court's power to modify visitation unless and until a parent completes certain programs and obtains counseling. (*Id.* at pp. 1451, 1456–1457.)

B.  *Analysis*

Mother argues that the juvenile court's error impermissibly restricts the family court's authority to modify her visitation rights. She claims that the exit order as written by the juvenile court "set[s] the conditions under which supervision" of mother's visits with M.M. may be lifted, essentially mandating that mother's visits remain monitored until "the successful completion of a substance abuse program, followed by six-months of aftercare." We disagree.

The juvenile court's exit order granted physical custody of M.M. to father, provided that mother have regular visitation with M.M., and required that mother's visits be monitored until further order of the family court. It then explained why mother's

11

visits were to be supervised, stating that mother had not made progress towards eliminating the issues that originally brought M.M. within the juvenile court's jurisdiction.  It listed the programs that the juvenile court had ordered mother to complete, including a drug program to address mother's substance abuse, psychiatric treatment to address the paranoid and erratic behavior caused by her substance abuse, and parenting classes to address her inappropriate and nonprotective behavior with M.M.

Critically, the exit order did not include mandatory language purporting to limit the family court's statutory authority to modify the custody and visitation orders going forward.  (Compare with *In re Cole Y.*, *supra*, 233 Cal.App.4th at pp. 1451, 1456 [juvenile court exceeded its authority by issuing an exit order stating that "'[i]n order to modify the court's orders, . . . [the offending parent would] have to complete . . . a full drug program with weekly testing, a parenting program and individual counseling'"].)

The exit order does not require the family court to ensure that mother has completed all ordered programs before liberalizing visitation.  On the contrary, it expressly stated that the conditions it placed on mother's visitation rights would persist until the exit order was superseded by a subsequent family court order.  Nothing in the language of the juvenile court's exit order prevents mother from going to the family court and requesting any desired modifications.

In sum, the juvenile court's exit order simply "does not tell the family court what to do." (*In re D.B.* (2020) 48 Cal.App.5th 613, 627.)  Accordingly, the order remains within the juvenile court's considerable discretion.

12

## DISPOSITION

The orders are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
ASHMANN-GERST

We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ