Filed 10/6/25  In re A.R. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re A.R. et al., Persons Coming Under the Juvenile Court Law. | C103034 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES, | (Super. Ct. Nos. JD241954, JD241955) |
| Plaintiff and Respondent, | |
| v. | |
| D.P. et al., | |
| Defendants; | |
| A.R. et al., | |
| Appellants. | |
| In re A.H., a Person Coming Under the Juvenile Court Law. | C103035 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES, | (Super. Ct. No. JD241956) |
| Plaintiff and Respondent, | |
| v. | |
| D.P. et al., | |
| Defendants; | |

1

A.H.,

        Appellant.

In re P.J. et al., Persons Coming Under the Juvenile Court Law.

SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES,

        Plaintiff and Respondent,

    v.

D.P.,

        Defendant;

M.J.,

        Defendant and Respondent;

P.J. et al.,

        Appellants.

C103036

(Super. Ct. Nos. JD242210, JD242211)

Appellant minors A.R., D.R., A.H., D.J. and P.J. appeal from the juvenile court's orders terminating jurisdiction. (Welf. & Inst. Code, §§ 364, 395.)[1] Appointed counsel for minors A.R. and D.R. filed a brief pursuant to *In re Phoenix H.* (2009) 47 Cal.4th 835 and did not assert any arguable issues. Appointed counsel for minors A.H., D.J. and P.J. filed substantive briefs arguing the juvenile court orders dismissing jurisdiction are not

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2

supported by sufficient evidence. This court consolidated the matters for oral argument and decision on its own motion.

We will dismiss the appeal filed by minors A.R. and D.R. As for the appeals filed by minors A.H., D.J. and P.J, we will affirm the juvenile court's orders.

BACKGROUND

The five appellant minors in these cases previously appealed from the juvenile court's section 300 and 387 dispositional orders, which placed them in mother's custody during their dependency proceedings. This court affirmed the juvenile court's orders, setting forth much of the following background. (*In re A.R. et al.* (June 30, 2025, C101873, C101874 & C101875) [nonpub. opn.].)

On May 13, 2022, the Sacramento Department of Child, Family and Adult Services (Department) filed section 300 petitions on behalf of minors A.H., A.R., and D.R., along with three non-party children, based on mother's failure to provide the minors with adequate shelter, care, supervision, and protection, as well as domestic violence between mother and Maurice J. (Maurice) (the father of minors D.J. and P.J.). Law enforcement found the minors living in a filthy car with limited food and inadequate supervision. Mother was provided with resources and housing referrals but had not followed through. The domestic violence event supporting the petitions took place on March 21, 2022, when Maurice physically assaulted mother in the minors' presence, but there were also reports of previous instances of domestic violence. Mother claimed the domestic violence was not an issue because she was no longer dating anyone. There had been prior reports that mother may have been using illicit substances and that she was physically abusing, and not meeting the mental health care needs of, three of her children who are not parties to this appeal. A.H., A.R., and D.R. were ordered detained.

Twins D.J. and P.J. were born in October 2022 and tested positive for amphetamines and methamphetamine at birth. Less than two weeks before their birth, Maurice hit mother in the jaw. Soon thereafter, Maurice was incarcerated.

In e-mails and phone calls made to Maurice while he was in jail between October 4 and 15, 2022, mother expressed anger, apologized for calling the police, spoke of ending their relationship, but also indicated a wish that they could be a family. Maurice told the social worker that mother was lying about him hitting her and that he and mother planned to marry.

The Department filed section 300 petitions on behalf of the twins based on the domestic violence. Citing the prior petitions, the Department alleged there was a substantial risk the twins would be abused or neglected under section 300, subdivision (j). Twins D.J. and P.J. were ordered detained.

When a social worker interviewed mother in November 2022, mother again said she was no longer in a relationship with Maurice, and there should be no more domestic violence. On December 12, 2022, mother obtained a restraining order that protected her and all the children from Maurice.

In November 2022, the juvenile court sustained the section 300 petitions filed on behalf of A.R. and D.R., adjudged them dependents of the juvenile court, ordered them removed from parental custody, and ordered reunification services. Mother's case plan included professional counseling to address domestic violence, codependency and protective parenting. It required mother to enroll in a domestic violence education program, obtain a mental health assessment, participate in counseling, take a parenting education class, maintain safe and suitable housing, not reside with an adult who used illicit substances or otherwise posed a risk to her children, and not engage in conflict or domestic violence. In December 2022, the juvenile court made the same findings and orders in A.H.'s case.

Mother participated in her services and by February 2023, the Department reported she had been generally compliant with her drug treatment and testing requirements. She was on track to finish her education requirements within a couple

4

of months.  Maurice's domestic violence counselor told the Department Maurice was doing well and had great input in classes.

In March 2023, the juvenile court sustained the section 300 petitions filed on behalf of twins D.J. and P.J., adjudged them dependents of the juvenile court and, in accordance with the Department's recommendation, ordered them placed with mother with family maintenance services.  The case plan was to address issues of parental responsibility, domestic violence, anger control, co-parenting and conjoint counseling, and other issues that might be identified by a therapist.  Maurice was to spend time with the twins three days a week for two hours in a public setting.  Exchanges were to be facilitated by the Department.  Mother and Maurice were not to be in each other's presence until May 19, 2025, but they were permitted peaceful telephone contact to discuss issues related to the children.

Later in 2023, A.R. and D.R. were returned to mother's care.  In July 2023, the juvenile court modified the December 2022 restraining order to allow peaceful contact, with Maurice ordered to engage in weekly drug testing.  The no-contact and stay-away orders were removed but the other provisions of the restraining order remained in effect.  D.R., A.R., and the twins remained in mother's care with family maintenance services.

By August 2023, the Department reported that mother had made progress.  She had stable housing and was able to complete her required services, including parenting classes, counseling services, and substance abuse services.  Mother complied with weekly meetings for her recovery and did additional drug testing.  She had been clean since November 2022, and graduated from drug treatment court in July 2023.  The minors had adjusted well to living with mother and appeared comfortable, confident, and safe.  The Department opined that mother had learned from her past mistakes and showed tremendous growth.

The Department noted that, in the late spring of 2023, mother and Maurice had been seen together on a street.  Maurice had not completed his services.  Mother said

Maurice had provided transportation when her car was not working. The Department reported that mother was aware she had violated the restraining order, had taken full responsibility, and had identified alternate transportation. The Department was not concerned about mother's ability to keep her children safe. She was providing safe and stable housing and nutritious food for her children. D.R., A.R., and the twins appeared healthy, happy, and bonded with mother.

In September 2023, after finding mother made significant progress, the juvenile court returned A.H. to mother's care, ordering no contact between Maurice and A.H. unless it took place in public. A.H. remained a dependent, and the juvenile court ordered continuing family maintenance services.

In January 2024, the juvenile court terminated dependency for A.R. and D.R. The twins and A.H. remained in mother's care with family maintenance services. Mother had completed all her case plan services. Maurice had completed domestic violence and parenting courses but continued to test positive for marijuana and was inconsistent with visits. Mother reported he would sometimes meet her at the twins' childcare to help with morning drop off and afternoon pick up. The Department reported the twins appeared happy and comfortable in mother's care, that mother was able to care for her five children, and that she was organized and ensured all their individual needs were met.

On March 26, 2024, the Department received a report that on March 24, 2024, mother and Maurice had engaged in domestic violence while the children were in the home. When law enforcement arrived to address the incident, mother was arrested on an outstanding warrant from Nevada. A.R., D.R., P.J., D.J., and A.H. were placed in protective custody. The Nevada warrant was issued in a 2021 child abuse or neglect case and would later be dismissed.

Mother acknowledged the domestic violence and described the events that had occurred. She said Maurice arrived at her home, stood at the door, spoke loudly and used profanity, did not enter the home, and then went away. The next day, Maurice entered the

6

home uninvited through an unlocked door. Mother was in the kitchen, A.R. was at the dining table, and the other children were watching television in a bedroom. Maurice hit mother in the face with a closed fist. Mother called 911 and Maurice left before law enforcement officers arrived. Mother told the Department that, following a hearing regarding the twins, she began ignoring Maurice's efforts to contact her. He got mad and accused her of trying to keep the twins from him. Mother said she was no longer in a dating relationship with Maurice. She had an active restraining order against him, but he came over frequently. She did not normally contact law enforcement, but she did on March 24, 2024 when Maurice hit her.

On March 29, 2024, the Department filed section 300 petitions on behalf of D.R. and A.R. alleging, under subdivision (b)(1),[2] that the minors were at risk due to a history of domestic violence in their presence. The Department also filed section 387 supplemental petitions on behalf of the twins and A.H. alleging that, for the same reasons, the juvenile court's previous orders were no longer effective in protecting the minors. All five minors were ordered detained. By that time, Maurice had been arrested on various charges and was ineligible for bail.

Mother told the Department she was not in a relationship with Maurice as of April 2024, but they had been in an on-and-off relationship since 2021, and she admitted to being pregnant with his child. Maurice had been released from jail in November 2023. He learned of her address when he came over to pick up his belongings and " 'may have spent the night a few times' " – the last time being two weeks before the March 24, 2024 incident. Mother had completed domestic violence classes and knew about the honeymoon stage, red flags, and other characteristics of domestic violence but stated, " 'I didn't realize it was a honeymoon stage as he had been fine after getting out of jail.' "

---

[2] The petitions also alleged jurisdiction under subdivisions (g) and (j) but those allegations were later dismissed.

Mother said she would let Maurice into her home to avoid things escalating with him.  She noted the restraining order had been changed to a peaceful contact order.  She thought the peaceful contact order meant she had to let him be around the twins and did not understand that it required contact in a public place.  Once the terms of the peaceful contact order became clear to her at a hearing in March 2024, she started avoiding Maurice.  Having called the police on March 24, 2024, she did not understand how she had failed to protect her children.

Maurice said he helped care for the twins in mother's home.  He said he had been in a relationship with mother from 2021 to March 24, 2024, but the relationship ended when she made what he claimed were false allegations against him.  He denied committing domestic violence.  He said he and mother understood the peaceful contact order required them to meet in public.  He said mother wanted to keep her latest pregnancy secret from the Department until her pending dependency cases closed.

After the March 24, 2024 incident, mother tried to file for a new restraining order against Maurice, but was told she would need to get her attorney to help her.  She asked the Department for help.  In mid-April, mother and an advocate from a family services organization reported mother had been actively involved in school meetings and other services for A.H.  Mother signed up for Women's Empowerment, was seeking a cultural broker to assist her in obtaining services, and was seeking assistance to move to a different house.  By June 5, 2024, mother reported she was enrolled in individual counseling and a domestic violence victim group.

The juvenile court held a joint jurisdiction/disposition hearing on all three 2024 petitions.  Maurice testified, continued to deny he had been inside mother's home on March 24, 2024, and characterized mother's reports of domestic violence as untrue.  Before being incarcerated in October 2023, he would go to mother's house to do diaper changes, give bottles and baths, and help get the twins ready for daycare.  He would sometimes spend the night.  Mother would not allow him to be in the home between the

8

hours of 8:00 a.m. and 5:00 p.m., when social workers might be present. In March 2024, he learned mother had allowed his friend, Isaiah, to use the shower at her home. He believed mother and Isaiah were "messing around" behind his back.

Mother testified that although she was pregnant with Maurice's baby, they had not been intimate in a long time. She admitted he occasionally came over before March 24, 2024, to help the children get ready for the day. He began doing so after his release from incarceration in October 2023. Before that, he did not know where she lived, and she had lived in residences where male visitors were not allowed. At first things were peaceful. However, around the time of the March 2024 hearing in the twins' case, she began avoiding Maurice and not answering his calls or texts. On March 24, 2024, Maurice confronted her about why Isaiah had been in her home. Maurice asked mother to let Isaiah shower there the week before and, since the children were not home, she allowed it. When mother told Maurice that Isaiah had shown up wanting to take a shower and iron his clothes, Maurice punched her in the jaw. She pushed a side button on her phone to call 911 without Maurice knowing, and Maurice ran out the back door when law enforcement arrived. She had not previously sought to enforce the restraining order because Maurice had not hit her.

Mother testified that when she stopped responding to Maurice in March 2024, it was her intention to cease contact with him. She changed her number in April 2024 and began looking for a new place to live that was unknown to Maurice. She subsequently moved, no longer received calls from Maurice, and did not have people at her house.

Mother testified that after the children were detained, she participated in services regarding domestic violence. She started the services on April 26, 2024, and by the time of the contested hearing, she had completed eight weeks of the 12-week program. She also started individual counseling, which had been set up by the Department, and Women's Empowerment, which included domestic violence education. Since the minors'

recent detention, she had been active in A.H.'s use of services, conjoint counseling, and schooling. She was still participating in services with A.H. She felt ready to have the minors placed in her care as she had made her own safety precautions, was actively participating in services on her own, and knew not to have certain people around her and her children. She identified family and community support and said she knew how to speak up for herself and reach out for services if she needed help.

On July 8, 2024, the juvenile court granted mother's request for a three-year restraining order against Maurice, including a no-contact order prohibiting Maurice from coming within 100 yards of mother. It specified Maurice's visits with the twins were to be separate from mother and allowed for peaceful contact between Maurice and mother for the sole purpose of communicating about the twins.

The juvenile court sustained the section 300 and 387 petitions, adjudged A.R. and D.R. dependents, and continued the status of A.H. and the twins as dependents. All five minors were placed with mother with the provision of family maintenance services. In explaining its decision to place the minors with mother, the juvenile court stated that mother did not invite Maurice to her home on the day of the most recent incident, called police immediately, obtained a restraining order, subsequently moved to a new address unknown to Maurice, changed her phone number, and sought support. The juvenile court believed mother had taken the Department's concerns seriously. It noted that Maurice was incarcerated.

The Department filed status reports on January 7, 2025. It reported that mother was currently on probation. She was residing in a three-bedroom home that was appropriately furnished and free of safety hazards. She was unemployed but receiving aid for the minors. She had appropriate childcare and reliable transportation. Mother had graduated from Women's Empowerment, which provided job training, education, literacy and awareness. It was described as a "rigorous course that takes dedication and motivation." Mother completed her case plan services, was loving and patient and

10

attentive to the minors' needs, and had demonstrated she was able to provide a safe and clean home for her children. The minors appeared content and comfortable in her care. The Department concluded mother had demonstrated she was able to provide for the minors and ensure their safety, had taken great steps to improve herself, and had overcome the problems that caused her to come before the court. She continued to be actively engaged in her services and take steps to ensure the safety and well-being of the minors and had demonstrated a clear understating of the concern that led to their removal.

Maurice remained incarcerated. He said he was thankful mother was able to provide care for the children. In his parenting class he learned that the children's safety and needs were the priority. He stated he coparented well with mother, although mother would like to have no contact with him.

The Department recommended that mother be given sole physical and legal custody of all five minors and that dependency be terminated. No testimony was presented at the January 17, 2025 review hearing. Over the objections of the minors' attorney, the juvenile court found the conditions justifying jurisdiction over the children no longer existed. It terminated jurisdiction, ordered that mother have sole legal and physical custody, and limited father to supervised visitation. Maurice could have phone contact with the twins while incarcerated, and after his release, visits supervised by someone other than mother.

DISCUSSION

Minors A.H., D.J. and P.J. contend the juvenile court erred in terminating dependency jurisdiction at the January 17, 2025 review hearing. They argue continuance of court supervision was required to protect them from risk of harm.

Section 364, subdivision (a) provides the standard when "a child under the supervision of the juvenile court . . . is not removed from the physical custody of his or her parent or guardian" (see *In re Pedro Z.* (2010) 190 Cal.App.4th 12, 20), and when a child has been removed from the physical custody of a parent but is later returned to

11

the home under court supervision.  (See *In re Shannon M.* (2013) 221 Cal.App.4th 282, 290-291; *Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 313-315.)  "At the section 364 review hearing, the juvenile court is not concerned with reunification, but in determining whether the dependency should be terminated or supervision is necessary. [Citations.]  The juvenile court makes this determination based on the totality of the evidence before it, including reports of the social worker who is required to make a recommendation concerning the necessity of continued supervision."  (*In re Armando L.* (2016) 1 Cal.App.5th 606, 615.)  "[U]nder section 364[, subdivision ](c), the juvenile court must terminate dependency jurisdiction unless either the parent, the guardian, the child, or the social services agency establishes by a preponderance of the evidence that the conditions justifying assumption of jurisdiction exist or will exist if supervision is withdrawn.  Thus, in the absence of a contrary showing at the review hearing, termination of dependency jurisdiction will be the 'default result.' "  (*In re Aurora P.* (2015) 241 Cal.App.4th 1142, 1155-1156 (*Aurora P.*); see *In re Armando L.*, at p. 615.)  Termination of dependency jurisdiction will apply "unless either the parent, the guardian, or the child objects and establishes by a preponderance of the evidence that conditions justifying retention of jurisdiction exist or are likely to exist if supervision is withdrawn. [Citation.]"  (*Aurora P.,* at p. 1163.)  The party "seeking to persuade the juvenile court to do something other than follow the statutory presumption favoring termination of jurisdiction . . . [bears] the burden to establish the existence of conditions justifying retention of dependency jurisdiction.  [Citation.]"  (*Ibid.*)

The courts in *Aurora P.* and *In re N.O.* explained that the substantial evidence standard of review applies when a social services agency opposes termination of jurisdiction, but a different standard of review applies where the agency recommended termination of jurisdiction and the juvenile court determined that the party bearing the burden of proof failed to meet that burden.  (*Aurora P., supra*, 241 Cal.App.4th at p. 1156; *In re N.O.* (2019) 31 Cal.App.5th 899, 925 (*N.O*).)  In the latter situation, "the

12

question is 'whether the evidence compels a finding in favor of the appellant[s] as a matter of law.' [Citation.]" (*Aurora P.*, at p. 1163; see also *N.O.*, at p. 926 [the test is whether appellant can show by undisputed facts that the juvenile court erred as a matter of law when it terminated dependency jurisdiction].) We conclude that under either the substantial evidence standard or the heightened standard articulated in *Aurora P.* and *N.O.*, the juvenile court's order should be affirmed.

There is no dispute that mother had sufficiently addressed any substance abuse problem and that she was maintaining a suitable and clean home, appropriate childcare, reliable transportation, and adequate provisions for the minors. In addition, the record contains substantial evidence that mother had taken steps to improve herself and to overcome the situation that resulted in jurisdiction. She called law enforcement immediately after the March 2024 domestic violence incident, then changed her phone number, moved to an address unknown to Maurice, obtained a restraining order, and identified a support network. She stopped allowing third parties into her home. She participated in additional domestic violence services, which she recognized she needed and signed up for on her own. She participated in individual and conjoint counseling and graduated from the Women's Empowerment program. She identified family and community support and said she knew how to request assistance. The social worker stated that mother had been able to articulate an understanding of domestic violence, including information about red flags and de-escalating situations, and had set appropriate boundaries.

Nevertheless, the minors claim the evidence was insufficient to find that mother was able to protect the minors from the risk of further domestic violence. A.H. argues the evidence does not support a conclusion that mother had overcome the circumstances that had resulted in jurisdiction. Twins D.J. and P.J. emphasize mother's history of domestic violence with Maurice and argue they need the protection of court supervision because

13

mother "never demonstrated insight into the recurring protective issues regarding her children."

While the record contains evidence that mother had lacked sufficient insight, there is also substantial evidence, as we have explained, that she had gained insight and had taken many commendable steps to address the prior concerns. The totality of the evidence does not compel reversal. We do not reweigh evidence, reassess the credibility of witnesses, or determine the persuasiveness of evidence. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319; *In re Jason L.* (1990) 222 Cal.App.3d 1206, 1214; *In re Cheryl E.* (1984) 161 Cal.App.3d 587, 598.) We resolve all conflicts in favor of the prevailing party. (*Yazdi v. Dental Bd. of California* (2020) 57 Cal.App.5th 25, 32.)

The twins note that because Maurice was in custody, he and mother did not have an opportunity to reengage in the cycle of violence. But they indicate that Maurice did not have an anticipated release date, and they do not establish that the juvenile court must retain jurisdiction for some unknown time.

A.H. claims that ongoing supervision was necessary to ensure that mother continued to attend to A.H.'s additional needs. A.H. acknowledges that her services were "mostly in place" but argues that mother's ability to implement those services had not been sufficiently tested and A.H. might need additional services. However, A.H. has not established that the juvenile court must maintain jurisdiction for an additional period of time to further test mother's implementation skills. And A.H. relies on circumstances over two years earlier to support her argument. More recent circumstances provide substantial evidence to support the juvenile court's orders, and the totality of the evidence does not compel reversal. Mother completed her case plan, including counseling and parenting classes. She demonstrated her ability to remain sober, maintain a support system, and maintain safe and stable housing. The social worker reported mother had reliable transportation, was maintaining all the minors in her home, was meeting all their

14

needs, and had been providing sufficient care for them. Mother had been active in A.H.'s services, conjoint counseling, and schooling.

On this record, as to the appeals filed by minors A.H., D.J. and P.J, we will affirm the juvenile court's orders.

## DISPOSITION

The appeal filed in case No. C103034 on January 23, 2025, by minors A.R. and D.R. is dismissed pursuant to *In re Phoenix H., supra,* 47 Cal.4th 835.

As to the appeal filed in case No. C103035 on January 23, 2025, by minor A.H., and the appeal filed in case No. C103036 on January 23, 2025, by minors D.J. and P.J., the juvenile court's January 17, 2025 orders terminating jurisdiction and making concomitant custody orders are affirmed.

/S/
MAURO, Acting P. J.

We concur:


/S/
DUARTE, J.


/S/
RENNER, J.

15